# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

_____

**STEPHANIE GONZALES, et al,**
    Plaintiffs,

v.                                                              Civ. No. 05-0941 BB/LFG

**THE GOODYEAR TIRE AND RUBBER CO.**
**et al**,
    Defendants.
**And**

**ALICE MARIE HOLGUIN, et al.,**
    Plaintiff Intervenors,

v.

**THE GOODYEAR TIRE AND RUBBER CO.**
**et al**,
    Defendants.

### MEMORANDUM OPINION AND ORDER

These matters come before the Court on Defendant Goodyear Venezuela's Motion to Dismiss Goodyear Venezuela for lack of jurisdiction (Doc. 6) and Defendants Drivetime and Goodyear Venezuela's Motion to Substitute the Signature Page on Notice of Removal. (Doc. No. 87). This Court held a hearing on the jurisdictional matter in November, 2005, at which time the Court granted Plaintiffs' request for 90 days of discovery. That period has now expired, and the parties have submitted supplemental responses to this Court. This Court, having considered the arguments of the parties, and being otherwise advised in the

premises, finds that the motion to dismiss Goodyear Venezuela should be GRANTED and that the motion to substitute the signature page should be DENIED.

**I. Introduction**

This case arises out of a tragic accident in which a husband was driving, with his wife as passenger, when their vehicle rolled. Both the husband and wife were fatally injured in the crash. The Estates of both the husband and wife have asserted claims against various defendants, including a products liability claim against Goodyear Venezuela, a subsidiary of the Goodyear Corporation. The Plaintiffs allege that a defective tire manufactured by Goodyear Venezuela caused the accident.

**II. Standard of Review**

Plaintiffs bear the burden of establishing the basis of personal jurisdiction. Kuenzle v. HTM Sport-Und Freizeitgerate AG, 102 F.3d 453, 456 (10th Cir. 1996) ("The plaintiff bears the burden of establishing personal jurisdiction over the defendant."). Because this Court has not held an evidentiary hearing to resolve this matter, Plaintiffs must only make a prima facie showing of personal jurisdiction to defeat Defendant Goodyear's motion. Soma Med. Int'l v. Standard Chartered

Bank, 196 F.3d 1292, 1295 (10th Cir. 1999). Factual disputes will be resolved in favor of the Plaintiffs. Jemez Agency, Inc. v. Cigna Corp., 866 F. Supp. 1340, 1342 (D.N.M. 1994).

**III. Discussion**

A. The Law of Personal Jurisdiction

The Supreme Court has held that the Due Process Clause of the Fourteenth Amendment forbids courts from exercising jurisdiction over defendants unless "the defendant purposefully established minimum contacts with the forum state." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985); Far West Capital, Inc. v. Towne, 46 F.3d 1071, 1074 (10th Cir. 1995) ("To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the Due Process Clause of the Fourteenth Amendment."). In other words, "the defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." Worldwide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980).

### (1) "National Contacts"

Defendant Goodyear Venezuela argues that this Court cannot claim either general or specific jurisdiction over Goodyear Venezuala because Plaintiffs have failed to identify any contact at all between Goodyear Venezuela and the State of New Mexico, thus failing the Supreme Court's "minimum contacts" test. Furthermore, Goodyear Venezuela argues that Plaintiffs have not established that Goodyear Venezuela was properly served, in accordance with the Hague Convention.  In their Response to Defendant's Motion to Dismiss (Doc. 22), Plaintiffs clarified that 1.) they are arguing only that this Court may properly exercise specific jurisdiction, and 2.) they are seeking such jurisdiction on the basis of Goodyear Venezuela's contacts "with the United States, not just the State of New Mexico."  Pls.' Resp. at 3, 7.

Plaintiffs' arguments do not square with Supreme Court precedents and Tenth Circuit application of these precedents.  It is apparent from the precedents that, in order for a court to exercise jurisdiction over a defendant, the defendant must have contacts within *the state* in which the defendant is haled into court.   The Supreme Court directs district courts to determine whether the defendant "purposefully avail[ed] itself of the privilege of conducting activities *within the forum State."* Hanson v. Denckla, 357 U.S. 235, 253 (1958) (emphasis added); Pro Axess, Inc. v.

Orlux Distribution, Inc., 428 F.3d 1270, 1277 (10th Cir. 2005) (quoting Hanson, 357 U.S. at 253).  See also Bell Helicopter Textron, Inc. v. Heliqwest International, Ltd., 385 F.3d 1291, 1298 (2004) (searching for "purposeful availment in a specific state"); Kuenzle, 102 F.3d at 456 (in specific jurisdiction analysis, focusing on contacts with forum state of Wyoming).  Thus, Plaintiffs fail to meet this test, as they do not provide evidence of contact with the forum state, but rather with the United States as a whole. See Pls.' Ex. K (Letters dated February 25, 2004 and September 7, 2004) (evidence that Goodyear Venezuela stipulated to be subject to the laws of the United States with respect to Goodyear USA's discharge of Goodyear Venezuela's debts); Pls.' Supp. Resp. at 10.

It is true that some courts will apply a "national contacts" analysis when there is a federal statute authorizing nationwide service of process.  See, e.g., Pinker v. Roche, 292 F.3d 361, 369 (3rd Cir. 2002); NGS American, Inc. v. Jefferson, 218 F.3d 519, 524 n.5 (6th Cir. 2000).  However, there is no such federal statute at issue in this case.  Moreover, even if there were such a statute, the Tenth Circuit has not adopted the "national contacts" test, even in a case where a federal statute authorizes nationwide service of process. See Peay v. BellSouth Medical Assistance Plan, 205 F.3d 1206, 1211 -1212 (10th Cir. 2000).

Thus, Plaintiffs urge this Court to depart from this precedent when it asks the Court to consider evidence of "national contacts" as evidence that personal jurisdiction is proper in this Court. However, given Tenth Circuit precedent, this Court will decline to apply a "national contacts" analysis.

### (2) "Alter Ego" Analysis

Plaintiffs also argue that this Court should exercise jurisdiction over Goodyear Venezuela because Goodyear USA and Goodyear Venezuela "operate as a fully integrated business enterprise." Pls.' Supp. Resp. at 2. In other words, according to Plaintiffs, "Goodyear Venezuela is Goodyear USA, and vice versa." Id. at 3. Plaintiffs continue with this theme throughout their Supplemental Response in Opposition to Motion to Dismiss. See generally id. Although Plaintiffs do not use these terms, Plaintiffs are in effect urging this Court to apply the "alter ego" doctrine from the law of corporations in order to find jurisdiction proper over Goodyear Venezuela.

The law of New Mexico governs the analysis of personal jurisdiction over a nonresident defendant corporation. Jemez Agency, Inc. v. CIGNA Corp., 866 F.Supp. 1340, 1343 (D.N.M., 1994). The New Mexico Court of Appeals has recently explained that, generally speaking, "the mere relationship of a parent

corporation and subsidiary corporation is not in itself a sufficient basis for subjecting both to the jurisdiction of the forum state, where one is a non-resident and is not otherwise present or doing business in the forum state." Alto Eldorado Partnership, L.L.C. v. Amrep Corp., 124 P.3d 585, 597 (N.M. Ct. App. 2005).  The court further explained that "[a]n alter ego theory under substantive corporate law principles is not a substitute for minimum contacts." Id. at 594.  However, the court also noted that, while every element of an alter ego test need not be met, "the relationship between a parent and its subsidiary may be crucial in evaluating jurisdiction itself." Id.

   Therefore, while the mere relationship is insufficient, the interaction between a parent corporation and a subsidiary corporation is an important factor in the minimum contacts analysis.  If, for example, a parent exerts sufficient control over the subsidiary, the acts of the parent may be imputed to the subsidiary. Id. at 598 (Sutin, J., concurring) (citing Jemez Agency for the proposition that alter ego, agency, and conspiracy theories can be used to attribute or impute the conduct of one corporation to another corporation in the same corporate family); see also Donatelli v. National Hockey League, 893 F.2d 459, 465-66 (1st Cir. 1990) (collecting cases); In re Teligent, Inc. v. Banda 26, 2004 WL 724945, *5 (Bkrtcy. S.D.N.Y) (noting that New York courts require a foreign subsidiary to be an

7

"agent" or "mere department" of the parent in order for the court to have personal jurisdiction).

The three requirements for piercing the corporate veil under New Mexico law are: (1) instrumentality or domination; (2) improper purpose; and (3) proximate cause. Scott v. AZL Res. Inc., 753 P.2d 897, 900 (N.M. 1988); Garcia v. Coffman, 946 N.M. 216, 220 (N.M. Ct. App. 1997). To explain the element of "instrumentality or domination," the New Mexico courts have quoted the rule that required level of "[c]ontrol is not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own." Garcia, 946 N.M. at 220.

Even in the light most favorable to Plaintiffs, the evidence here does not reveal anything outside the scope of a garden variety parent-subsidiary relationship. For example, there is evidence in the record that: Goodyear USA has always owned a controlling interest in Goodyear Venezuela (Def.'s Ex. B at 37-38; Pls.' Ex. C at 99-100); Goodyear Venezuela manufactures tires according to the technical specifications of Goodyear USA (Pls.' Ex. D at 63, 74-75); and, of the twenty-four officers and ten directors of Goodyear USA, and the three officers and four directors

of Goodyear Venezuela, there is only *one* person who overlaps (Def.'s Ex. C at 5-7). Plaintiffs claim that the "best and most obvious evidence" of an improper relationship between the parent and subsidiary in this case is the job description of the President and Manager of Goodyear Venezuela, Emilio Bellorin, who reports directly to Eduardo Fortunato, the President of Goodyear Latin America, who, in turn, reports to the President and CEO of Goodyear Tire and Rubber Company. Pls.' Supp. Resp. at 9-10; Pls.' Ex. J; Pls.' Ex. E at 112. The job description provides that the:

> [p]urpose of the position is [to] coordinate and direct the activities of the Venezuelan Subsidiary of the Company, in order to achieve the sales, marketing, distribution, and financial objectives of the Sub, and of the Region and Corporation in measure, and to protect the assets of the Sub, thus guaranteeing the permanence and viability of the brand and distribution network in the local and regional markets.

Pls.' Ex. J. This evidence is simply not enough to demonstrate that the separate corporate entities of the parent and subsidiary should be disregarded. A parent normally exerts some measure of control over a subsidiary. Scott, 753 P.2d at 901 ("Mere control by the parent corporation is not enough to warrant piercing the corporate veil."); Garcia, 946 P.2d at 220 (quoting the rule that "[c]ontrol is not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked to

that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own."); see Kurt A. Strasser, *Piercing the Veil in Corporate Groups*, 37 CONN. L. REV. 637, 638-39 (2005) ("Whatever the corporate formalities chosen, the parent typically has very real control over the operations and decisions of the subsidiary and the extent to which the parent exercises that control is based on business strategy for the enterprise rather than meaningful separation of the legally independent corporate entities."). Indeed, that Goodyear Venezuela produces tires according to the specifications of the parent seems to be well within the scope of a normal parent-subsidiary relationship. Moreover, that portion of the job description Plaintiffs cite states one of the goals of the President of Goodyear Venezuela is "to achieve the sales, marketing, distribution, and financial objectives of the Sub, and of the Region and Corporation in measure" merely reflects the fact that the President of Goodyear Venezuela is to be primarily concerned with the objectives of the Sub, and then "the Region and Corporation in measure." See Pls.' Ex. J. In addition, the description states that the purpose of the position is to guarantee "the permanence and viability of the brand and distribution network in the local and regional markets." Id.

    Plaintiffs do not address the second prong of the test for piercing the corporate veil in New Mexico, that of improper purpose. Scott, 753 P.2d at 900

("Mere control by the parent corporation is not enough to warrant piercing the corporate veil. Some form of moral culpability attributable to the parent, such as use of the subsidiary to perpetrate a fraud is required."). Therefore, Plaintiffs cannot show the existence of an "alter ego" on the basis of some alleged "moral culpability."

Plaintiffs, then, have not shown the requisite level of control or any evidence of improper purpose, and therefore this Court will not disregard the corporate forms of the parent and subsidiary for the purpose of analyzing jurisdiction.

### (3) Stream of Commerce

This Court will now consider whether Plaintiffs have established jurisdiction under the "stream of commerce" theory which is recognized by the Supreme Court as an alternate basis for minimum contacts with the State of New Mexico. Because of two four-vote plurality opinions in <u>Asahi Metal Industry Company, Ltd. v. Superior Court of California</u>, 480 U.S. 102 (1987), the Court's most recent decision concerning the "stream of commerce" theory, "matters have been left in somewhat of a muddle."4 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE §1067.4 at 497 (3rd. ed 2002). Because of the two different tests set forth by the plurality opinions in <u>Asahi</u>, the case has left some judicial flotsam in its wake. For example, circuits have decided that 1) <u>Asahi</u> essentially did not change

the law regarding the stream of commerce from prior law, see Irving v. Owens-Corning Fiberglass Corp., 864 F.2d 383, 386 (5th Cir. 1989); 2) Asahi's holding is limited to the facts at issue in that case, i.e., third party litigation between two foreign corporations, see Barone v. Rich Bros. Interstate Display Fireworks Co., 25 F.3d 610, 614 (8th Cir. 1994); and 3) the tests from both plurality opinions should be applied, see Pennzoil Products Co. v. Colelli & Associates, Inc., 149 F.3d 197, 207 n.11 (3rd Cir. 1998). See 4 WRIGHT & MILLER at 497 (describing cases); Pennzoil Products Co., 149 F.3d at 206 (same).  To resolve the issue before this Court, therefore, the Court will look to Worldwide Volkswagen, as the last clear guidance from the Supreme Court on the "stream of commerce" theory, as well as applicable Tenth Circuit precedent.

In Worldwide Volkswagen, plaintiffs brought a products liability action against the retailer and wholesaler of Audi automobiles.  Worldwide, 444 U.S. at 288.  The Supreme Court held that the state of Oklahoma could not exercise personal jurisdiction over the defendants based on the "fortuitous circumstance that a single Audi automobile, sold in New York to New York residents, happened to suffer an accident while passing through Oklahoma." Id. at 295.  The Court held that the mere fact that "an automobile is mobile by its very design" and that it was foreseeable that an automobile sold in New York would arrive in Oklahoma was not

a sufficient basis for the exercise of personal jurisdiction. Id. at 295-96. Reviewing the record, the Court noted a lack of "affiliating circumstances that are a necessary predicate to any exercise of state court jurisdiction." The "lack of affiliating circumstances" in Worldwide Volkswagen parallel the circumstances before this Court. There, as here, there is no evidence that the Defendant closed sales, performed services, or solicited business in the forum state either through salespersons or through advertising. See Viso Aff. at ¶3 (Ex. E) (no sales to New Mexico); Cabrera Aff. at ¶¶11-13 (Ex. D) (Goodyear Venezuela not a party to distribution contracts).

The most recent Tenth Circuit case analyzing facts analogous to those in this case, Bell Helicopter Textron, Inc. v. Heliqwest International, Ltd., 385 F.3d 1291 (10th Cir. 2004), is also instructive. In Bell Helicopter, the court addressed a situation in which a lessor of a helicopter was sued by the lessee, who attempted to have the court assert jurisdiction over the lessor defendant. Bell Helicopter, 385 F.3d at 1294-95. In this context, the Tenth Circuit held that "the mere possibility [that the lessee might take the helicopter to Utah], even if true, does not suggest that [the lessor] purposefully availed itself of the protections of Utah laws." Id. at 1297. The Bell Helicopter court continued to note that "[a] general hope that a party will use a product in a general region is too remote an aspiration to qualify as purposeful

13

availment in a specific state." Id. at 1298; see also Rodriguez v. Fullerton Tires Corp., 115 F.3d 81 (1st Cir. 1997) ("Even assuming that [the defendant] had specific knowledge that the stream of commerce would move its tire rims into Puerto Rico . . . this awareness alone would not be enough to constitute the purposeful availment which is necessary for a showing of minimum contacts.").

The Tenth Circuit has also held, in a case involving a products liability action brought against a defendant manufacturer of helicopter cables, that "[a]lthough the [defendant's] employee may have known that the cable was destined for use in the Rocky Mountain region, which includes Utah, it was never specifically foreseeable by [the defendant] that its product was destined for the Utah market." Fidelity and Casualty Co. of New York v. Philadelphia Resins Corp., 766 F.2d 440, 447 (1985). Thus, the court found that the defendant's "relationship to the Utah market [was] simply too attenuated to support in personam jurisdiction under the 'stream of commerce' theory . . ." Id.

Here, the Plaintiffs have only adduced facts that show that Goodyear Venezuela sold tires to its parent, at arm's length, who then, in turn, sold tires to Discount Tire of Arizona. See Pls.' Ex. F at 29, 66-67, 77 (explaining the chain of sale); Cabrera Aff. at ¶10 (loans made between the corporations bear a fair market interest rate, Goodyear Venezuela pays Goodyear USA a royalty to use the parent's

14

trademarks and technical information, and Goodyear Venezuela must pay fees for the use of facilities owned, and services provided by, Goodyear USA); Def.'s Ex. A (trademark agreement and licensing agreement).  In addition, other than evidence that the brand name printed on the tire itself has some "sales and marketing component," Pls.' Ex. F at 44, 48, Plaintiffs have not shown any evidence that Goodyear Venezuela was involved with any marketing efforts directed at the State of New Mexico.  Pls.' Ex. F at 43, 63, 66, 79; Cabrera Aff. at ¶6.  Relatedly, there is evidence that Goodyear Venezuela does not own any personal property or real estate in New Mexico, and does not maintain any employees, agents or sales representatives within New Mexico. Cabrera Aff. at ¶6.

In addition, there is evidence that although Goodyear Venezuela knew that a tire would be shipped to the United States, it did not know where the tires would ultimately "end[ ] up."  Pls.' Ex. F at 56-57 ("Pathfinder" tires were made exclusively for sale to Discount Tire, in Arizona); Pls.' Ex. D at 51 (Goodyear Venezuela would not know of tire's destination); Def.'s Ex. F at 79 (same). Finally, Plaintiffs have not alleged that the decedents purchased the vehicle or the tires in the State of New Mexico.  In light of these facts, Goodyear Venezuela cannot be said to have purposefully availed itself of the protections of the laws of New Mexico. See Guinness Import Co. v. Mark VII Distributors, Inc., 153 F.3d 607, 610 (8th Cir.

1998). Again, as discussed herein above, while Plaintiffs' evidence might support a finding of national contacts with the United States, such an analysis is not appropriate in this case. Therefore, specific jurisdiction cannot be exercised over Goodyear Venezuela consonant with the requirements of Due Process.

Normally, the Due Process analysis does not end with the analysis of whether minimum contacts exist with the forum state. Rather, if a court finds that minimum contacts exist, it must then determine whether the exercise of jurisdiction would be reasonable. <u>Rambo v. American Southern Ins. Co.</u>, 839 F.2d 1415, 1419 n.6 (10th Cir. 1988). This Court need not reach this point of the due process analysis, having determined that minimum contacts do not exist with the State of New Mexico.

### B. Service of Process

Because this Court cannot properly exercise specific personal jurisdiction over Goodyear Venezuela, it is unnecessary to consider whether service was proper under the Hague Convention.

### C. Motion to Substitute the Signature Page

This Court has already held that the Removal Notice in this case is procedurally proper. <u>See</u> Memorandum Opinion and Order at 11-13 (January 25, 2006). Therefore, it is not necessary for this Court to decide whether the signature page should be amended, as Defendants Drivetime and Goodyear Venezuela request

in their Motion to Substitute the Signature Page on Notice of Removal. (Doc. No. 87). Therefore, the Motion is DENIED.

## IV. Order

It is hereby ORDERED that Defendant Goodyear Venezuela's Motion to Dismiss (Doc. 6) is GRANTED, and Defendants Goodyear Venezuela and Drivetime's Motion to Substitute the Signature Page (Doc. 87) is DENIED.

**DATED** at Albuquerque, this 6th day of July, 2006.

BRUCE D. BLACK
United States District Judge