# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

STEPHANIE GONZALES, et al.,

        Plaintiffs,

v.                                      No. CIV 05-941 BB/LFG

THE GOODYEAR TIRE AND RUBBER COMPANY,
et al.,

        Defendants,

ALICIA MARIE HOLGUIN, et al.,

        Plaintiffs-Intervenors

v.

THE GOODYEAR TIRE AND RUBBER COMPANY,
et al.,

        Defendants.

## MEMORANDUM OPINION AND ORDER
## GRANTING IN PART AND DENYING IN PART
## DEFENDANT GOODYEAR TIRE & RUBBER COMPANY'S
## MOTION TO COMPEL and GRANTING MOTION TO STRIKE

THIS MATTER is before the Court on the Motion to Compel of Defendant The Goodyear Tire & Rubber Company [Doc. 85], filed herein on May 5, 2006; and the Motion to Strike Plaintiffs' Supplemental Response in Opposition [Doc. 131], filed herein on July 12, 2006.  For the reasons detailed below, the Motion to Compel is granted in part and denied in part.  No response is necessary to the Motion to Strike.  The Court finds that the document filed by Plaintiffs on June 29, 2006 entitled "Supplemental Response in Opposition" [Doc. 118] is in fact a surreply and was filed without

leave of Court, as required by Local Rule D.N.M.LR-Civ. 7.6(d).  Doc. 118 is stricken and will not be considered by the Court in connection with this Motion.

Defendant The Goodyear Tire & Rubber Company ("Goodyear") served its First Set of Interrogatories and Requests for Production ("RFP") on each of the nine Plaintiffs and Plaintiff-Intervenors (hereinafter referred to in the aggregate as "Claimants") on February 10, 2006.  For purposes of its Motion to Compel, Goodyear provides only a sample of the responses it received, asserting that these responses are materially identical to the responses of the remaining Claimants.

The court therefore discusses only the responses of Plaintiff-Intervenor Michael Valencia, and those of Plaintiff Stephanie Gonzales, as these are the only responses provided to the Court and discussed by the parties in their briefing (the only exception being the response of Plaintiff-Intervenor Alicia Marie Holguin to the RFP No. 13 directed to her, which will be discussed separately below in the section dealing with releases related to the Estate of Adolfo Michael Valencia).  All rulings made herein will apply to all Claimants who supplied responses similar to those of Michael Valencia and Stephanie Gonzales.

The discovery requests at issue in this Motion are Interrogatory Nos. 1, 6, 7, 9, 11, 12, 17-25, 28, 29, 30 and 33; and Request for Production Nos. 3, 5, 13, 14, 16, 18, 19, 20 and 22.

In addition, Goodyear asks the Court to order all Claimants who have not already done so to execute the releases for information which were attached to the Requests for Production, and to execute the releases for medical information and Social Security information which Goodyear furnished to Claimants' counsel.

Goodyear further seeks an order requiring Claimants' counsel to file a damages stipulation.

## Discussion

Fed. R. Civ. P. 26 allows each party to obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party.  To be discoverable, the information need not be admissible at trial so long as it appears reasonably calculated to lead to discovery of admissible evidence.

While this language is broad, the scope of allowable discovery is not without limits.  In considering motions to compel, the Court may properly balance the needs and interests of the parties and may limit discovery when the benefit is minimal and the burdens of production are great.  Koch v. Koch Indus., 203 F.3d 1202, 1238 (10th Cir. 2000); Fed. R. Civ. P. 26(b)(2).

### *Releases Relating to the Estate of Adolfo Michael Valencia*

It appears from the parties' briefs that the major problems have been resolved surrounding lack of releases signed by an authorized personal representative for the Estate of Adolfo Michael Valencia.  Claimants have supplied documentation that attorney Rachel Higgins, rather than Plaintiff-Intervenor Alicia Marie Holguin, is the duly-appointed personal representative of the Estate.  This documentation is sufficient response to the portion of RFP No. 5 which seeks "all documents" relating to the appointment of Rachel Higgins.  Other issues raised by RFP No. 5 will be discussed further below.

Goodyear states that it has now received all releases for the Estate of Adolfo Michael Valencia, except for the release for Human Services Department records.  It appears that Claimants have not interposed an objection to supplying this particular release for the Estate, and the Court finds that such information is relevant with respect to decedent Adolfo Michael Valencia.  The Court will order that this release be provided to Goodyear.

### *Information Concerning Non-Passengers:*
### *Interrogatory Nos. 1, 6, 9;  RFP Nos. 3, 13, 14;  Initial Disclosures*

These Interrogatories seek certain information from Claimants, including those who were not passengers in the vehicle at the time of the accident which gave rise to this lawsuit.  The non-passengers resist providing disclosure of this information on grounds of privacy and relevance, among other objections.

The Discovery Requests at Issue

In **Interrogatory No. 1**, Goodyear asks Claimants to give basic background information, including name, address, etc.  The controversial portion of this Interrogatory is the request for Social Security numbers and driver's license numbers.  Claimants declined to provide this information "due to privacy and identity theft concerns," adding that if Goodyear provided a "specific reason you might need such information" then Claimants would reconsider its objection.  Claimants Stephanie Gonzales individually, and Abie Padilla, have apparently agreed to provide the Social Security and driver's license information [*see*, Doc. 85, Ex. 18, at 1], but the other Claimants maintain their objections.

In **Interrogatory No. 6**, Goodyear asks each Claimant whether s/he has ever been arrested, charged with or convicted of a felony or misdemeanor and, if so, to give details.  **RFP No. 14** asks each Claimant to provide all documents relating any civil or criminal proceedings in which the Claimant was involved, including complete court files, transcripts of testimony, etc.

Claimants objected to these requests on grounds of relevance and, without waiving the objection stated in addition that "regarding felonies and misdemeanors probative of truthfulness," there are none.

In **Interrogatory No. 9**, Goodyear asks Claimants to provide the names and contact

4

information for every medical facility or practitioner the Claimant has seen during the five years prior to the accident and continuing up to the present.  The non-passenger Claimants objected, noting "I only have an individual claim for the untimely loss of a parent for which there was no resulting physical or mental or medical condition." Specifically, Claimants objected to the Interrogatory on grounds it violates Claimants' privacy, is irrelevant to the lawsuit, and is overly broad, unduly burdensome, and harassing.  At least one Claimant, without waiving the objection, provided names of some medical providers.

**RFP No. 3** asks the Claimants to produce all medical records for any treatment "with respect to any injuries or damages you claim in this lawsuit."  Claimants objected on grounds of privacy/ confidentiality and relevance.

**RFP No. 13** asks Claimants to sign and return several different types of attached records authorizations.  Claimants objected to providing blank releases on grounds of relevance, undue burden, harassment and violation of privacy.

The releases which Goodyear wants the Claimants to sign are set forth in Ex. 2 to its Motion to Compel [Doc. 85].  They include the following:  (1) Authority to Release Division of Vocational Rehabilitation Records; (2) Educational Information and Documents; (3) Employment Information and Documents; (3) Military Records Release; (4) Authority to Release Department of Motor Vehicle Records; and (5) Release directed to the New Mexico Human Services Department.

In addition to those set forth in Ex. 2, Goodyear also sent releases for Social Security information to Claimant's counsel, and blank forms for release of medical records and mental health records for each of the Claimants.  [*See* Exs. 4-5 to Doc. 85; Doc. 86, at 3-4].

**Initial Disclosures**:  Goodyear contends that Claimants failed to supply medical releases as

5

part of their Initial Disclosures as required by this Court Local Rule D.N.M.LR-Civ. 26.3(d), and that Goodyear had to mail blank forms to Claimants and ask that they sign and return them; even so, Goodyear says, they have not done so.

<u>Social Security Numbers and Driver's License Information</u>

The non-passenger Claimants assert that providing Social Security numbers and driver's license information violates their privacy. Indeed, it does, as discussed herein. But, the issue only arises because the non-passenger Claimants initiated a lawsuit against defendants seeking monetary damages. Defendants are entitled to investigate the claims so as to evaluate their merit, and to defend themselves at trial if the claims cannot otherwise be resolved.

Goodyear argues it needs Claimants' Social Security and driver's license numbers in order to "assist in public record searches," since Claimants are litigants in this lawsuit who are expected to testify at trial [Doc. 85, Ex. 15], and to confirm Claimants' claims that they have no relevant criminal history.

Goodyear states in its briefing that some Claimants have agreed to provide this information, but others say they are willing to provide the information only so long as Goodyear discloses the Social Security numbers and driver's license numbers for each witness it expects to call at trial. In their brief, Claimants do not concede that they agreed to provide this information, arguing instead that it is not discoverable because the information sought infringes on their right to privacy, and disclosure would raise concerns about identity theft and other forms of fraud. However, Goodyear states in its Memorandum that Plaintiffs Stephanie Gonzales individually, and Abie Padilla, have agreed to provide their Social Security numbers and driver's license information, and counsel for Claimants so stated in a May 3, 2006 letter to Goodyear's attorney; this ruling therefore does not apply to these

6

Claimants nor to any others who may have given permission for this disclosure.

There is substantial support for the Claimants' argument that disclosure of the information sought can result in the deprivation of privacy.  Congress recognizes a privacy interest in an individual's Social Security number and driver's license information.  The Privacy Act of 1974, Pub. L. 93-579 § 7, 88 Stat. 1896, 1909, *reprinted in* 5 U.S.C. § 552a note, makes it unlawful for a governmental agency to discriminate against an individual because that person refuses to disclose his or her Social Security number.  The Driver's Privacy Protection Act of 1994, 18 U.S.C. § 2721 *et seq.*, prohibits the states, subject to certain exceptions, from releasing confidential information contained in drivers' records, including Social Security numbers (which fall within the Act's definition of "highly restricted personal information").  Id. at § 2725(4).  Neither of these statutes, of course, deals with a litigant's responsibilities to provide information within the strictures of Rule 26.

So, too, the Freedom of Information Act, 5 U.S.C. § 552(b)(6) provides an exemption from release of information "the disclosure of which would constitute a clearly unwarranted invasion of personal privacy," and courts have held that a person's Social Security number falls within this definition.  *See, e.g.*, Int'l Brotherhood of Elec. Workers Local No. 5 v. United States Dep't of HUD, 852 F.2d 87, 89 (3d Cir. 1988), *overruled on other grounds*, Sheet Metal Workers Int'l Ass'n Local No. 19 v. United States Dep't of VA, 135 F.3d 891 (3d Cir. 1998) ("the extensive use of Social Security numbers as universal identifiers in both the public and private sectors is 'one of the most serious manifestations of privacy concerns in the Nation,'" quoting from a Senate Report on the Privacy Act); Sherman v. U.S. Dep't of the Army, 244 F.3d 357, 366 (5th Cir. 2001) ("individual citizens have a substantial informational privacy right to limit the disclosure of their SSNs, and consequently reduce the risk that they will be affected by various identity fraud crimes").

Other courts have also recognized that individuals have a strong privacy interest in their Social Security numbers and driver's license information.  In <u>Greidinger v. Davis</u>, 988 F.2d 1344 (4th Cir. 1993), the Fourth Circuit held that a state voter registration statute unconstitutionally restricted the right to vote by requiring that voters permit public dissemination of their Social Security numbers as a precondition to voting.  In finding the existence of a privacy interest in a person's Social Security number, the court noted that since passage of the Privacy Act in 1974, "an individual's concern over his SSN's confidentiality and misuse has become significantly more compelling."  <u>Id.</u>, at 1353.

Similarly, In <u>Purdy v. Burlington N.& Santa Fe Ry. Co.</u>, No. 0:98-CV-00833-DWF, 2000 WL 34251818 (D. Minn. Mar. 28, 2000), the court issued a temporary restraining order to prevent disclosure of parties' social security numbers and salary information, finding a "high likelihood" of success on the merits of an invasion of privacy claim.  The court rejected the argument that computer technology and other developments have reduced everyone's expectation of privacy with respect to their Social Security numbers, and concluded:

> There is no question that individuals have a strong privacy interest in their social security numbers.  These numbers are used routinely in our day-to-day private transactions to verify our identity and to protect the security of our transactions.  As a result, the Court concludes that a reasonable fact-finder is likely to determine that publication of that fact is highly offensive.

<u>Id.</u>, at *4.

With the congressional enactments and case decisions in other areas, there is little doubt that the non-passenger Claimants have an expectation of privacy in their Social Security numbers and other identifiers that could be used to access private information.  However, Goodyear points out other authorities that support discovery of a litigant's Social Security number.  *See, e.g.*, <u>Jones v. J.C.</u>

Penney's Department Stores, Inc., 228 F.R.D. 190, 197 n.13 (W.D.N.Y. 2005), wherein the court states that "prevailing caselaw supports the propriety of Ms. Snyder's question seeking Plaintiff's social security number."

A party may not assert a claim for damages and then seek to prevent the other side from obtaining information relevant to the claim, thereby depriving the opposing party of an opportunity to evaluate the claim for settlement or alternatively, to be prepared to meet the proofs at trial. "Plaintiffs who voluntarily come into court and seek economic damages must be prepared to prove their economic loss: 'The scales of justice would hardly remain equal if a party can assert a claim against another and then be able to block . . . discovery attempts . . . .'" Brooks v. Hilton Casinos, Inc., 959 F.2d 757, 768 (9th Cir. 1992). In this case, Claimant's privacy interest in their Social Security number and driver's license information does not outweigh Goodyear's right to defend itself. Indeed, in the absence of the claims, there would be no need and no right to obtain this information.

The Court overrules in part Claimants' objections to Interrogatory No. 1. Claimants are directed to provide the last four digits of their Social Security numbers in response to that Interrogatory, and on any releases they are required to execute.

<u>Releases Relating to Education, Employment History and Motor Vehicle Records</u>

As noted above, Goodyear has sent a number of different release forms to Claimants, aside from the medical releases, asking them to sign and provide their Social Security numbers so that Goodyear can obtain information relating to Claimants, including such things as work history and earnings, education, and criminal records from various agencies and private entities. *See*, Ex. 2 to Doc. 85. In addition, Goodyear asks in RFP 13 that Claimants sign and return release forms.

The Court has already ruled that Claimants need to provide the last four digits of their Social

Security numbers on these forms, if required.  The next question is whether Claimants have to return these releases at all.  Claimants object to providing open-ended releases as irrelevant, unduly burdensome, harassing and as violating Claimants' privacy.

Goodyear argues that it needs information about the non-passengers' education and employment histories and Human Services records, as these documents "may speak to the degree of loss of 'companionship, society, comfort; aid and protection' that are elements of a loss of consortium claim." [Doc. 86, at 8].  Goodyear also contends that information as to other automobile accidents these Claimants may have been involved in would be relevant to whether this accident alone was the cause of their emotional distress.

Goodyear says that it will agree to withdraw its request for certain releases, if Claimants will stipulate that they are only seeking certain kinds of damages.  It asks the Court to "order claimants to files Stipulations indicating that the non-passengers are not seeking and will not claim damage for loss of earnings and/or loss of earning capacity." [Doc. 86, at 9-10].

Claimants note that Goodyear already has releases for the two deceased passengers and the one surviving passenger.  They contend that the other Claimants, non-passengers in the automobile accident, are simply bringing claims for loss of consortium and do not seek any damages for lost earnings or earning capacity which might justify discovery of employment, educational, or Human Services records.  They would be willing to stipulate that they seek only "garden-variety loss of consortium claims" but they refuse to sign the "Stipulated Judgment" forms which Goodyear has provided. [Doc. 96, at 8].  Goodyear counters that, if Claimants would sign a stipulation indicating that the non-passengers are not seeking and will not claim damages for loss of earnings and/or loss of earning capacity, then it would not press its request for releases seeking employment information.

The Court agrees with Claimants that a "Stipulated Judgment" such as that proposed by Goodyear [Ex. D. to Doc. 96] is inappropriate, as such a practice could lead to mini-judgments on every issue in the case – even, as in this situation, issues that were not part of the case to begin with. If the non-passenger Claimants do not seek damages for lost earnings or lost earning capacity, as they assert in their Response [Doc. 96, at 8], they should submit stipulations to that effect.  If they provide these stipulations, the Court will not order that they provide releases for any employment, educational, vocational rehabilitation, Human Services, or Social Security records.  If they do not provide such stipulations, the Court orders that they execute those releases.

Such a stipulation would not address the issue of motor vehicle records.  The Court agrees with Goodyear that evidence of Claimants' involvement in any other motor vehicle accidents may have a bearing on the causes of their emotional distress.  Goodyear is free to inquire into this issue. However, the release Goodyear seeks for Motor Vehicle records authorizes disclosure of the "driving history, citations, enforcement records or any records and any other information it may have" regarding the relator.  This is too broad.  The fact that an individual brings a claim for loss of consortium due to the death of a parent in a motor vehicle accident does not justify a wholesale rummaging through that person's motor vehicle records for information on every citation he or she may ever have received.  Non-passenger Claimants need not sign the release for Motor Vehicle records.  Disclosure of Motor Vehicle records for the driver of the vehicle, decedent Adolfo Michael Valencia, is appropriate, however, and it appears that the Motor Vehicle release has already been executed by his Estate and delivered to Defendants' attorneys.  [*See*, Doc. 96, Ex. B, at 1].

### Information as to Other Criminal or Civil Proceedings

Goodyear asks Claimants in Interrogatory No. 6 whether they have ever been arrested,

charged with or convicted of a crime and if so to give details; and in RFP No. 14 asks them to provide all documents relating to any civil or criminal proceedings in which they have ever been involved, "including but not limited to complete court files, police reports, transcripts of testimony, and documents concerning the disposition of all such proceedings."  Claimants objected on grounds of relevance, and some also stated that they have no criminal record of felonies or misdemeanors probative of truthfulness.

The Court agrees with Goodyear that information as to criminal convictions can be admissible for impeachment under certain circumstances, if Claimant testifies at trial.  Fed. R. Evid. 609; Pasternak v. Pan Am. Petroleum Corp., 417 F.2d 1292 (10th Cir. 1969).  While such evidence may or may not be admissible at trial, that is not the test for discoverability.  Fed. R. Civ. P. 26(b)(1); Centurion Indus., Inc. v. Warren Steurer & Assoc., 665 F. 2d 323, 326 (10th Cir. 1981).

In light of Rule 609, and assuming that Claimants will be witnesses at trial, Goodyear is entitled to discover whether Claimants have been convicted of a felony, or any crime involving dishonesty or false statement, within the past ten years.  Any arrests or charges which did not result in conviction are not discoverable.  Claimants are therefore directed to respond to Interrogatory No. 6 and RFP No. 14 by providing the date, court and docket number of any criminal proceedings which resulted in a conviction against them within the past ten years.  They are not required to supply complete court files, transcripts or other information requested in RFP No. 14, nor are they required to provide any releases regarding their criminal history.

The Court finds further that information regarding Claimants' involvement in any civil proceeding is relevant or likely to lead to discovery of relevant information.  However, Goodyear's request is overly broad.  Claimants are directed to answer RFP No. 14 by identifying any civil

12

proceedings in which they were parties within the past ten years, by providing the title of the case, court in which the action was brought, and the docket number.  With this information, Goodyear can obtain whatever documentation it needs from the court files, which are matters of public record.

<u>Medical Releases and Medical Records</u>

Interrogatory No. 9 and RFP No. 3 inquire into Claimant's medical treatment and ask for medical and mental health records.  Goodyear also asks that Claimants be ordered to execute releases for medical and mental health information as required by this district's Local Rules regarding mandatory initial disclosures.  The non-passenger Claimants object on grounds of relevancy, violation of privacy, overbreadth, and undue burden.

Goodyear argues that the Claimants have placed their medical and psychological histories in issue by asserting claims for loss of consortium based on their parents' death, and that Defendant is entitled to investigate whether there may be other potential causes for the emotional distress which they allege was caused by the accident in question and resulting loss of their loved ones.

The non-passenger Claimants argue that they bring only claims for loss of consortium caused by the death of their parents and therefore have not placed their physical or medical health at issue. They contend that the "mere filing of a lawsuit alleging emotional harm, without a separate claim of infliction of emotional distress and without a damages claim of severe and emotionally devastating harm does not put a litigant's emotional condition at issue."  [Doc. 96, at 5].

Furthermore, Claimants argue, even if the loss of consortium claim is seen to encompass an element of emotional distress, they are claiming only general "garden variety" emotional distress damages rather than a specific mental or psychological disorder.  They contend that since they have not sought medical treatment or obtained an expert opinion to support their claim for loss of

consortium, they should not have to reveal their medical history to Defendant.  Claimants further object to signing medical releases in blank for any and all providers.

As Goodyear correctly points out, this district's Local Rules require as part of the mandatory initial disclosures under Fed. R. Civ. P. 26 that a party whose physical or mental condition is at issue must produce certain information about his or her medical history, including:  (1) a list of the names and contact information for all medical and mental health care providers who have treated the party within the five years preceding the event in question; (2) all records of such healthcare providers already in the party's possession; and (3) for each healthcare provider, a signed authorization to release medical records form.  D.N.M.LR-Civ. 26.3(d).  Claimants herein have not complied with this rule, arguing that their physical or mental health is not in issue.

The Court disagrees.  Claimants are seeking damages for loss of consortium caused by the death of their parents and have alleged injury including the loss of comfort, love, affection, support, companionship and guidance, as well as their own "pain, anguish, sorrow, mental suffering, stress and shock they have experienced, and will experience in the future" as a result of these deaths.  [Doc. 1, Exs. B and E].  Claimants argue that a loss of consortium claim is not one for "'emotional distress' in the form of grief or sorrow for the loss, but rather the quality and nature of the relationship . . . ." [Doc. 96, at 5].

But the New Mexico Jury Instruction on loss of consortium defines the claim as one for "The emotional distress of [plaintiff] due to the loss . . . ," NM UJI Civil 13-1810A.  And in their Complaints, Claimants explicitly allege "anguish" and "sorrow" as part of their damages.  This language puts their emotional state squarely in issue and entitles Goodyear to all information bearing on the causes of their claimed emotional damages.  *See generally,* Drain v. Wells Fargo Bank, Civ.

14

No. 04-399 MV/KBM, slip op. (D.N.M. Aug. 1, 2005), and cases collected therein.

Claimant's argument that they allege only "garden variety" emotional distress does not absolve them of their obligation to provide the mandatory disclosures required under D.N.M.LR-Civ. 26.3. The distinction between "garden variety" damages, and those explicitly alleged as a separate cause of action, is generally raised in the context of a request for a physical or mental examination under Fed. R. Civ. P. 35. Owens v. Sprint/United Mgmt. Co., 221 F.R.D. 657, 659-660 (D. Kan. 2004):

> Plaintiff argues that she is only seeking actual damages and non-pecuniary damages . . . for what some courts have called "garden variety" damages, such as mental anguish, mental distress, emotional pain, anxiety, embarrassment, humiliation, career disruption, and inconvenience, foreseeably flowing from Defendant's actions . . . . The fact that these damages claims may be the "garden variety" of damage claims for emotional distress does not automatically exempt them from discovery. Plaintiff's argument is more applicable in context of a Rule 35 motion to compel physical or mental examinations . . . .

See also, LaFave v. Symbios, Inc., No. CIV.A. 99-Z-1217, 2000 WL 1644154 (D. Colo. Apr. 14, 2000), at *2, wherein the court found that the plaintiff's "garden variety" allegations of emotional distress, while not specific enough to justify a Rule 35 examination, were nevertheless sufficient, in discovery, to permit Defendants access to her medical records:

> Medical records information is relevant to plaintiff's claim for emotional distress damages. The information is further relevant to the preparation of defendants' defenses against plaintiff's emotional distress damages claim, because her medical records may reveal stressors unrelated to defendants which may have affected plaintiff's emotional well being.

There is no Rule 35 issue in the present case. The Court finds that by their damage allegations, Claimants have put their medical conditions at issue in this case and Goodyear is entitled

15

to information as to "whether their claimed emotional condition can be attributed to life stressors apart from any alleged conduct on the part of Goodyear." [Doc. 111, at 3]. It may well be that some or all of such information will be not admissible at trial but, again, that is not the test at the discovery stage of the litigation.

The Court finds that the "physical or mental medical condition" of Claimants herein is at issue, as contemplated in Local Rule D.N.M.LR-Civ. 26.3(d), and Claimants are directed to provide all information required in that rule. That is, they must provide the names and contact information for any health care provider they have consulted within the five years preceding the events set forth in their complaints, and they must provide all records of such health care providers which are already in their possession. In addition, for each such provider they must provide a signed authorization to release medical records, as set forth in Appendix A to the Local Rules, and comply with all other requirements of Rule 26.3.

### *Information in Claimants' Possession Concerning Goodyear and the Tire at Issue as Covered by "Work Product" Protection: Interrogatory Nos. 7, 11, 12, 29, 30;  RFP Nos. 16,18,22*

Goodyear groups into this heading its discovery requests to which Claimants have objected on grounds of the work product doctrine. Goodyear describes this group of requests generally as seeking information in Claimants' possession concerning Goodyear or the tire in question.

The Discovery Requests at Issue

**Interrogatory No. 7** asks that Claimants describe in detail any information received by Claimants or their attorneys or agents "about the manufacture, design, or safety of the product at issue" from any governmental agency, any exchange group such as ATLA, or any private entity or individual. **RFP No. 22** asks Claimants to produce "all documents or material received by, or in the

16

possession of, you, your lawyers or representatives from any governmental agency (whether state or federal), any exchange group (e.g., ATLA, AEIG, etc.) or any private entity or individual regarding Goodyear, Goodyear Venezuela, the tire in question and/or the tire model in question."

In response to Interrogatory No. 7, Claimants stated that they do not have any such information and they do not know what information their attorneys have received. Counsel responded separately by claiming work product and/or attorney-client privilege and, without waiving the objection, state that they have no such information. Plaintiffs objected to RFP No. 22 on grounds the request calls for production of documents "received by or in the possession of any governmental agency," regarding Goodyear or the tire. They stated that Goodyear may have some basis for knowing which of its documents may have been received by or may now be in the possession of a governmental agency, but Claimants would not. In addition, they objected on grounds of work product privilege.

**Interrogatory No. 11** asks that Claimants disclose details of any information they have received concerning Goodyear's "involvement in any other litigation involving the same product or a product you claim is substantially similar to the product at issue," including identifying information about the litigation, any depositions of Goodyear employees, and any other documents received.

Plaintiff-Intervenors responded that they have only "some owner's records that might be with the vehicle" and do not know what information their attorneys have received. Counsel for Plaintiff-Intervenors responded separately, claiming work product privilege and arguing the request is not proper because it requests documents generated by and in possession of the Defendants themselves. Plaintiffs and their counsel raise the same objection as do Counsel for Plaintiff-Intervenors.

**Interrogatory No. 12** asks Claimants to list "all documents of Goodyear . . . other than those

produced by Defendant . . . " and to identify any such documents which Claimants claim are covered by a protective order, identifying as well the particular protective order which they claim is applicable. **RFP No. 16** seeks all written records or documents of Goodyear that Claimants or their attorneys or agents have in their possession, custody or control regarding the tire in question or similar tire.

Claimants respond to Interrogatory No. 12 and RFP No. 16 by claiming work product privilege and arguing the requests are not proper because they involve documents generated by and in possession of the Defendants themselves.

**Interrogatory No. 29** asks whether Claimants have obtained any witness statements or had any conversations or contact with current or former employees of Goodyear regarding the tire or the accident involved in this case.

Claimants objected on grounds of work product privilege.

**Interrogatory No. 30** asks Claimants to set forth details of any other incident, claim or lawsuit of which they are aware, arising from the same or similar circumstances as those in the present case.

Claimants objected on grounds of work product privilege.

**RFP No. 18** asks Claimants to produce any written or printed material in the actual or constructive possession of Claimants or their counsel relating in any way to the tire in question.

Claimants responded by claiming work product privilege and arguing the requests are not proper because they involve documents generated by and in possession of the Defendants themselves. In addition, Claimants objected on grounds of vagueness, in that it is unclear what is meant by "constructive possession"; however, Plaintiff-Intervenors added that, to the extent they understand the question, "those items would be produced if we have any."  Counsel for both sets of Claimants

stated that, to the extent they understand this request, there are no such documents in their possession.

Application of Work Product Doctrine

The work product doctrine was first articulated by the United States Supreme Court in the case of <u>Hickman v. Taylor</u>, 329 U.S. 495, 67 S. Ct. 385 (1947), and was later incorporated into Fed. R. Civ. P. 26(b)(3), adopted in 1970.  The work product privilege exists "to promote the adversary system by safeguarding the fruits of any attorney's trial preparation from the discovery attempts of the opponent."  <u>United States v. Am. Tel. & Tel. Co.</u>, 642 F.2d 1285, 1299 (D.C. Cir. 1980).

The Tenth Circuit notes that "the work product privilege fosters the general policy against invading the privacy of an attorney's course of preparation which is so well recognized and so essential to an orderly working of our system of legal procedure that a burden rests on the one who would invade that privacy to establish adequate reasons to justify production through a subpoena or court order [internal punctuation omitted]."  <u>United States v. Colo. Sup. Ct.</u>, 189 F.3d 1281, 1287 (10th Cir. 1999).  However, the Tenth Circuit also points out that the party seeking to assert the work product doctrine as a bar to discovery has the burden of establishing that it is applicable. <u>Barclaysamerican Corp. v. Kane</u>, 746 F.2d 653, 656 (10th Cir. 1984).  And the court has noted that the work product doctrine enunciated in <u>Hickman</u> is "expressly limited to those matters relating to the lawyer's mental processes developed explicitly for litigation."  <u>Vargas v. United States (In re Grand Jury Proceedings)</u>, 727 F.2d 941, 945 (10th Cir. 1984).

Recently the Tenth Circuit rejected a call for broadening the reach of the work product doctrine by creating a new exception to the waiver rules, reiterating the Supreme Court's admonition that privileges are to be strictly construed, as they contravene "the normally predominant principle

19

of utilizing all rational means for ascertaining truth." In re Qwest Commc'ns Int'l, Inc., 450 F.3d 1179, 1185 (10th Cir. 2006).

Claimants argue that these discovery requests -- which would, among other things, force their attorneys to disclose whatever materials they may have received from "exchange groups" such as ATLA or AEIG; and describe any other lawsuits or incidents of which they have knowledge, involving the tire at issue in this case; and produce all written or printed material in Claimants' possession relating in any way to the tire in question – would violate the work product doctrine. They contend that even if this information would otherwise be discoverable or even required under the mandatory disclosure provisions of Rule 26, it would unfairly expose counsels' mental impressions to require that they reveal which documents and other material the attorneys selected and compiled into a group which counsel determined to be relevant to the issues in the case.

Claimants further contend that they need not identify which of their opponent's own documents are in plaintiff's counsel's possession, citing Hickman for the proposition that it is "typically unlawful to learn through discovery what an attorney has learned about a case." [Doc. 96, at 12].

The work product doctrine shields certain otherwise-discoverable information, in the interests of preserving the adversary process. *See generally*, Fed. R. Civ. P. 26(b)(3). And at times, the work product privilege even conflicts with the mandatory disclosure obligations of Rule 26. The federal rules were amended in 1993 to provide, among other things, for mandatory initial disclosure of certain kinds of information, including the identities of individuals, documents and other information which could lead to relevant facts. Fed. R. Civ. P. 26(a)(1). The purpose of the amendment was to require the parties, without awaiting formal discovery requests, to disclose certain basic information

20

needed in most cases to prepare for trial or make informed decisions about settlement.  Rule 26, Advisory Committee Note to 1993 Amendments.

Some of the material sought in the above described discovery requests falls within the scope of Claimants' mandatory initial disclosure obligation.  For example, the information sought in Interrogatories 11 and 12 would be covered by the mandatory initial disclosure obligation, as Claimants themselves argue, if not for the work product doctrine.

As one commentator, writing shortly after adoption of 1993 amendments, noted:

> The work product doctrine provides one way to avoid revealing information pursuant to mandatory disclosure duties. To comply with mandatory disclosure, litigants and their attorneys must make legal evaluations under the substantive law to decide which individuals, documents, and other information could lead to relevant facts. Litigants must wade through countless lists of individuals and voluminous documents to decide which items of information are helpful for deciding their dispute on the merits. This process of searching creates mental impressions, conclusions, opinions, and legal theories that have been consistently protected from discovery. Turning over the fruits of this investigation in compliance with mandatory disclosure could reveal the litigants' "intangible opinion work product"-- the unrecorded mental impressions, conclusions, opinions, and legal theories of the litigants.

Holmes, James, *The Disruption of Mandatory Disclosure with the Work Product Doctrine: An Analysis of a Potential Problem and a Proposed Solution*, 73 Tex. L. Rev. 177, 179-80 (1994).

The attorney's actions in choosing and gathering together particular documents or pieces of information is what that author terms "this elusive category of work product," that is, "'intangible opinion work product' – the unrecorded mental impressions, conclusions, opinions, and legal theories of the litigants."  Holmes, *supra*, at 180.

Several courts conclude that this type of intangible work product should be shielded from

discovery. As early as the seminal case of <u>Hickman v. Taylor</u>, the Supreme Court noted that "Proper preparation of a client's case demands that he [the attorney] *assemble information, sift what he considers to be the relevant from the irrelevant facts,* prepare his legal theories and plan his strategy without under and needless interference." <u>Id.</u>, 329 U.S. at 511 (emphasis added).

In <u>Berkey Photo, Inc. v, Eastman Kodak Co.</u>, 74 F.R.D. 613, 616 (S.D.N.Y. 1977), the Court held that "counsel's ordering of the 'facts,' referring to the prospective proofs, organizing, aligning, and marshaling empirical data with a view to combative employment that is the hallmark of the adversary enterprise" itself constitutes work product. Although ultimately ruling that plaintiff's counsel waived the right to rely on the work product doctrine by revealing to prospective witnesses the selected information, the court in <u>James Julian, Inc. v. Raytheon Co.</u>, 93 F.R.D. 138, 144 (D. Del. 1982), nevertheless held that the sorting process itself was indeed work product: "In selecting and ordering a few documents out of thousands counsel could not help but reveal important aspects of his understanding of the case."

*See also,* <u>Sporck v. Peil</u>, 759 F.2d 312, 316 (3d Cir. 1985) ("the selection and compilation of documents by counsel . . . falls within the highly-protected category of opinion work product"); <u>Shelton v. American Motors Corp.</u>, 805 F.2d 1323, 1326 (8th Cir. 1986) ("where . . . opposing counsel . . . has engaged in a selective process of compiling documents from among voluminous files in preparation for litigation, the mere acknowledgment of the existence of those documents would reveal counsel's mental impressions, which are protected work product).

There is contrary authority. *See, e.g.*, <u>Resolution Trust Corp. v. Heiserman</u>, 151 F.R.D. 367, 374 (D. Colo. 1993), in which the court noted:

> The only basis which RTC offers to support its attorney work-product

> claim is that the process of selecting documents represents counsel's mental impressions and legal opinions. Taken to its logical conclusion, such a claim renders virtually all document requests pursuant to Fed.R.Civ.P. 34 opinion work-product because they reveal an attorney's mental processes.

The Court concludes that the materials sought by Goodyear in these discovery requests do not, for the most part, fall within work product protection. While the Court agrees with the above authority that there may be instances in which the work product doctrine protects an attorney's actions in selecting and designating as relevant particular documents from a larger batch, that is not the situation involved herein.

The fact that Claimants herein may have sought and received information or materials from an exchange group such as ATLA, bearing on other cases involving this Defendant or this tire, is not the same type of activity as an attorney's "sifting" of facts or selection of particular documents from a large group, which might reveal what the attorney deemed to be relevant. The court in Bartley v. Isuzu Motors Ltd., 158 F.R.D. 165, 167 (D. Colo. 1994), rejected the argument that ATLA materials obtained by a plaintiff fall within the protection of the work product doctrine, noting that "[m]ere selection through a third-party source does not qualify under the doctrine." Accord, Miller v. Ford Motor Co., 184 F.R.D. 581 (S.D.W.Va. 1999); Bohannan v. Honda Motor Co., 127 F.R.D. 536, 539 (D. Kan. 1989) ("work product status does not apply to documents submitted to or received from a third party").

If Claimants in this case did obtain material about Goodyear from ATLA or similar groups, they should disclose this information to Goodyear, although they need not disclose the wording of their original request to the exchange group. Similarly, information obtained by Claimants from other sources, such as governmental agencies or court records, is not entitled to protection under the work

product doctrine.  If Claimants are in possession of information about other lawsuits involving Goodyear, or this tire, Defendants are entitled to know that.  It would not expose Claimant's counsel's thought processes for Claimants to disclose other lawsuits of which they are aware, and sharing of this information would permit both parties to make reasonable and informed evaluation of their opponents' settlement offers.

<u>Rulings on the Requests Involving Work Product Issues</u>

With the above discussion in mind, the Court rules as follows on the specific discovery requests raising the work product issue:

The information sought in **Interrogatory No. 7** is not protected by the work product doctrine, nor is it subject to protection as privileged attorney-client communication.  Claimants must respond to this interrogatory by giving the date, identity, present location and brief description of information which they or their attorneys received about the manufacture, design or safety of the tire in question in this litigation, whether that information was received from a governmental agency, an exchange group, or any private entity or individual.  Claimants must also state the source of the information.  If Claimants or their attorneys have not received any such information, they should so state but must supplement their responses as appropriate.

While it may be that Claimants intended **RFP No. 22** to reflect their request for information in Interrogatory No. 7, RFP No. 22 was inartfully drafted in such a way that Claimants thought – or claimed to think – that Goodyear wanted documents or materials *received by* governmental agencies, exchange groups, etc.  The Request is certainly vague as written, and it is difficult to decipher exactly what Goodyear is requesting here.  Claimants need not respond to this Request.

Claimants must answer **Interrogatory No. 11** by identifying other lawsuits of which they are

aware involving the tire in question in this litigation, including the names of parties, identification of the court, and the docket number.  Claimants need not provide depositions nor disclose any further information, as Goodyear is free to examine the court files for itself.

With regard to **Interrogatory No. 12** and **RFP No. 16**, Claimants need not respond to these requests separately, although some of this material may also fall within other discovery requests. In these requests, Goodyear seeks specifically to learn which of its own documents Claimants have in their possession and control, and asks them to produce any such documents relating to the tire in question or similar tires.  "[W]here a request is made for documents already in the possession of the requesting party, with the precise goal of learning what the opposing attorney's thinking or strategy may be," such request invades the province of work-product protection.  United States v. Doe (In re Grand Jury Subpoenas), 959 F.2d 1158, 1166 (2d Cir. 1992).

This ruling does not release Claimants from their obligation to provide, as part of their mandatory initial  disclosure obligations, a copy or description of all documents in their possession, custody and control which they may use to support their claims, and to supplement this disclosure as appropriate.   Fed. R. Civ. P. 26(a)(1)(B).

Claimants need not respond to **Interrogatory No. 29.**  Witness statements or conversations obtained by Claimants or their attorneys in anticipation of litigation are protected by the work product doctrine, Hickman v. Taylor, *supra*; In re Grand Jury Subpoena, 622 F.2d 933, 935 (6th Cir. 1980). In addition, while parties may be "compelled to disclose the identity and whereabouts of the persons having relevant knowledge, . . . they may not be forced to disclose which of these individuals they have in fact interviewed," as this would tend to disclose trial strategy.  Laxalt v. McClatchy, 116 F.R.D. 438, 443 (D. Nev. 1987).  Goodyear has not made the requisite showing of undue hardship

or inability to obtain the requested information through other means.

Under Fed. R. Civ. P. 26(a)(1)(A), Goodyear should already have received from Claimants the names and contact information for persons likely to have discoverable information, and Goodyear may contact these persons on its own.  Claimants are reminded of their duty to supplement these disclosures.

As requested in **Interrogatory No. 30**, if Claimants have information about other "incidents" or "claims" which did not result in litigation, they must identify any such incidents or claims by giving the date, location, names of the parties involved, and a brief description of the incident or claim.  No further response to Interrogatory No. 30 is necessary.

**RFP No. 18** is overly broad.  Its request for "all written or printed material in the actual or constructive possession of you or your attorneys relating in any way to the tire in question" could easily cover material reflecting attorneys' mental impressions, prepared in anticipation of litigation. However, to the extent Claimants are in possession of the specific types of documents noted in the Request – *e.g.*, test results, owner's manuals, marketing literature, etc. – Goodyear is entitled to know this. The Court rejects the objection that the request is vague in terms of what is meant by "constructive possession"; Claimants must produce or make available any materials in their possession, custody or control, or in the possession, custody or control of their counsel.

### *Contention Interrogatories and Requests for Production: Interrogatory Nos. 17-25, 28 and 33; RFP Nos. 19, 20*

#### The Discovery Requests at Issue

**Interrogatory Nos. 17 -25, 25 and 33** ask Claimants to provide detailed support and factual basis for certain allegations in their complaint, including how the tire was defective and how the

defect caused the accident; how and in what manner Goodyear was negligent; what caused the tread separation; what alternative methods of manufacture and alternative tire design would have been safer and were economically and technologically feasible; what alternative warnings should have been given; what conduct by Goodyear entitles Claimants to punitive damages; and which standards, codes and regulations applicable to the tire were violated.

Claimants responded to these interrogatories by objecting that the interrogatory calls for an expert opinion, or is premature and the underlying facts have not yet been completely developed. They stated basically that, as laypersons, all they can say is that tread should not peel off of tires. Claimants also interposed the work product doctrine in response to some of these interrogatories.

**RFP Nos. 19 and 20** ask Claimants to produce tires and tire components and copies of all material and designs and written records pertaining thereto, which reflect alternative, feasible tire designs safer than that of the tire in question.

Claimants objected on grounds the Requests call for an expert opinion and violate work p product protections.

<u>Rulings on Contention Interrogatories and Requests</u>

In their briefing, Claimants state that they have not responded fully to these requests because discovery is still ongoing and they have received few documents as yet from Goodyear dealing with the manufacture of this tire.  The state that their answers may be supplemented with more specifics regarding the manufacturing or design defect alleged, as discovery proceeds.

There is nothing improper about contention interrogatories, which seek specific information to back up a party's allegations.  Such interrogatories serve to narrow and define issues for trial and to enable the propounding party to determine the proof required to rebut the opponent's position.

<u>Koch v. Koch Indus., Inc.</u>, 6 F. Supp. 2d 1192, 1200 (D. Kan. 1998).  They are most useful toward the end of the discovery period.  Fed. R. Civ. P. 33 (c).

Discovery in this case is set to close on September 7, 2006.  [Doc. 97].  On July 18, 2006, Claimants filed a motion to vacate the trial setting and extend the discovery deadline [Doc. 139], and on July 27, 2006, they filed a "Motion to Determine the Scope of Discovery" [Doc. 146].  Neither of these motions has been fully briefed.  The Court finds that it is indeed too early to require responses to the above discovery requests which require a detailed exegesis of Claimant's claims for recovery.  These requests are denied.  However, they may be renewed closer to the end of discovery.

### *Communications Between Plaintiffs and Other Parties:* <br> *Request for Production No. 5*

**RFP No. 5** asks Claimants to produce "all documents relating to any communications concerning this litigation" between Claimants or their attorneys on the one hand and, on the other: (1) attorneys or representative of Foundation Reserve Insurance Company, (2) Rachel Higgins as personal representative of the Estate of Adolfo Michael Valencia, and (3) Sean Olivas.

Foundation Reserve Insurance Company ("Foundation Reserve") was originally named as a defendant in this action.  On July 18, 2006, the Court entered a Stipulated Order [Doc. 137] dismissing Foundation Reserve with prejudice, noting that Claimants and Foundation Reserve reached an agreement for dismissal of this defendant.

The Estate of Adolfo Michael Valencia was named as a Defendant in Plaintiff's original complaint.  The Estate is also one of the Plaintiff-Intervenors.

Sean Olivas is an attorney in private practice.  Documents in the case file indicate that Mr. Olivas represents Rachel Higgins, personal representative of the Estate of Adolfo Michael Valencia,

and Goodyear so states in its briefing.  Mr. Olivas is listed in the caption of this case as attorney for Plaintiff-Intervenor Michael Valencia, who is the son of decedent Adolfo Michael Valencia.  The Court assumes that this listing is incorrect.

Claimants objected to this RFP on grounds of attorney-client privilege and the work product doctrine.  However, Plaintiff-Intervenors list five documents in their possession that "might be responsive to this request"; Plaintiffs list ten such documents.

Although they did not raise an objection to this RFP based on relevancy, Claimants make that argument in their briefing on this motion, and correspondence between the parties (attached as exhibits to the Motion to Compel, Doc. 85] makes clear that Claimants have consistently questioned the relevance of this Request.  Goodyear states in its briefing that the materials are relevant to its arguments on diversity jurisdiction, including the "proper alignment" of Defendants Foundation Reserve and the Estate.  The Request also appears to be part of Goodyear's effort to sort out the question of who is in fact the personal representative for the Estate of Adolfo Michael Valencia.

The personal representative issue has been resolved, Foundation Reserve is no longer a party to this lawsuit, and the Court is not aware that the question of removal/remand is still at issue herein. The Court agrees with Claimants that the material sought is not relevant to the claims and defenses involved in this case.  RFP No. 5 need not be answered.

## **Order**

IT IS HEREBY ORDERED that the Motion to Compel of Defendant The Goodyear Tire & Rubber Company [Doc. 85] is granted in part and denied in part, as detailed above.  All discovery directed herein shall be completed within ten days of the date of this Order.

IT IS FURTHER ORDERED that the Motion to Strike Plaintiffs' Supplemental Response in Opposition [Doc. 131] is granted.  The document titled "Supplemental Response in Opposition to The Goodyear Tire & Rubber Company's Motion to Compel" [Doc. 118] is hereby stricken from the record for failure to comply with Local Rule on surreplies.


_Lorenzo F. Garcia_
Lorenzo F. Garcia
Chief United States Magistrate Judge