# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

STEPHANIE GONZALES, et al.,

                Plaintiffs,

v.                                                 No. CIV 05-941 BB/LFG

THE GOODYEAR TIRE AND RUBBER COMPANY,
et al.,

                Defendants,

ALICIA MARIE HOLGUIN, et al.,

                Plaintiffs-Intervenors

v.

THE GOODYEAR TIRE AND RUBBER COMPANY,
et al.,

                Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS-INTERVENORS' MOTION TO COMPEL DEFENDANT GOODYEAR TIRE & RUBBER COMPANY TO FULLY RESPOND TO DISCOVERY

THIS MATTER is before the Court on Plaintiffs-Intervenors' Motion to Compel Defendant Goodyear Tire & Rubber Company to Fully Respond to Discovery [Doc. 99], filed herein on June 5, 2006, along with a memorandum in support of the Motion.

Defendant Goodyear Tire & Rubber Company ("Goodyear") filed its Response [Doc. 119] on June 30, 2006, and Plaintiffs-Intervenors (hereinafter referred to as "Plaintiffs" for simplicity, and in keeping with their own nomenclature in their briefing) filed their Reply [Doc. 135] on July 17,

2006.  The Motion is now fully briefed.  For the reasons detailed below, the Motion to Compel is granted in part and denied in part.

## Procedural Background

Plaintiffs served written discovery requests in August 2005, along with their Complaint-in-Intervention, originally filed in New Mexico state court.  After this case was removed to federal court, Goodyear served objections to the Interrogatories and Requests for Production.  The parties thereafter agreed that Goodyear would serve further responses after the meet-and-confer session.  Goodyear served its Supplemental Answers to Plaintiffs-Intervenors' First Interrogatories and First Request for Production of Documents [*see* Docs. 78, 79] on April 14 and 17, 2006.

Plaintiffs filed their Motion to Compel with respect to these discovery responses on June 5, 2006.  This is well past the deadline set out in the District's Local Rules for filing a Motion to Compel.  D.N.M.LR-Civ. 26.6.  Plaintiffs did not seek an extension of this deadline, and they provide no explanation as to why they waited almost two months to file this Motion.  Local Rules provide that failure to proceed within the time period constitutes acceptance of the objection, but for good cause the Court may *sua sponte* change the 20 day period.

Goodyear did not ask that the Motion be denied on the basis of late filing, and the Court determines that resolution of the Motion on the merits will, in the long run, be a more expeditious way of settling several outstanding discovery disputes in this case.  This ruling does not, however, excuse any party in this case from its obligation to follow the rules of procedure.[1]

Plaintiffs also failed to attach to their Motion to Compel a copy of Goodyear's supplemental

---

[1]In future motion practice, the Court will strictly adhere to the time limits of D.N.M.LR-Civ. 26.6

responses to the discovery requests at issue. Plaintiffs attached only Goodyear's initial objections which, as noted above, were later supplemented. This violates Local Rule D.N.M.LR-Civ. 37.1(b). Plaintiffs partially remedied this failing by attaching to their Memorandum in Support a copy of correspondence dated May 1, 2006, in which the supplemental responses are set forth and are discussed in detail between counsel. [Doc. 100, Ex. D]. The Court admonishes Plaintiffs to fully comply with all rules of procedure in future filings.

### Discussion

For the factual background of this case, *see* Memorandum Opinion and Order Granting in Part Defendant Goodyear's Motion for Protective Order [Doc. 164], filed in this case on August 10, 2006. The Court will cite this Memorandum Opinion and Order again in the discussion below and will refer to this document as the "Order on Scope of Discovery."

In particular, the Court refers the parties to its ruling in the Order on Scope of Discovery defining the relevant group of tires as follows: the subject tire – that is, Goodyear's Pathfinder Radial ATR LT215/75R15 light truck tire manufactured in Valencia, Venezuela during the 36th week of 1997 – and all other Goodyear tires made from the same green tire, with the same tread pattern. This definition resolves many of the contested discovery requests, as noted in more detail below.

Plaintiffs contend as an initial matter that Goodyear's assertion of general objections, in a prelude to their specific objections/responses to individual discovery requests, is improper. The Court agrees.

In its response to Plaintiffs' discovery requests, Goodyear included three pages of "Introductory Statement and Prefatory Objections," to both the Interrogatories and Requests for Production, before noting specific objections to the individual discovery requests. General objections

3

of this nature are legally ineffective and do not fulfill a party's duty to respond or object to discovery requests.

Fed. R. Civ. P. 33(b)(1) provides that each interrogatory shall be answered separately and fully unless it is objected to, in which case the objecting party must state the reasons for the objection and shall answer to the extent the interrogatory is not objectionable.  All grounds for an objection shall be stated with specificity.  Rule 33(b)(4).  Rule 34(b) provides that responses to requests for production must state, with respect to each item or category requested, that production will be permitted unless the request is objected to, in which case the reasons for the objection must be stated.  If objection is made to part of an item or category, the part shall be specified and production or inspection permitted of the remaining parts.

A general objection to a request for production which does not identify the documents to be withheld but states, for example, merely that the responding party objects to the production of privileged documents is "entirely inadequate."  Peat, Marwick, Mitchell & Co. v. West, 748 F.2d 540, 541 (10th Cir. 1984); see also, W.R. Grace & Co. v. Pullman, Inc., 446 F. Supp. 771, 774-75 (W.D. Okla. 1976).   A response to requests for production "must clearly set forth the specifics of the objection and how that objection relates to the documents being demanded . . . .  The burden is on the party resisting discovery to clarify and explain precisely why its objections are proper . . . ."  Obiajulu v. City of Rochester, 166 F.R.D. 293, 295 (W.D.N.Y. 1996); Tucker v. Ohtsu Tire & Rubber Co., 191 F.R.D. 495, 498 (D. Md. 2000).

The Court thus rejects, and will not consider, any generalized objections.  With regard to the specific Interrogatories and Requests for Production, Goodyear's position is that it already fully responded to all discovery requests.  Plaintiffs' position is that every one of the 107 discovery

requests is at issue.  The Court addresses each discovery request separately.

*Interrogatories*

Interrogatory No. 1

Plaintiffs ask Goodyear to identify fully the person(s) answering the interrogatories, including certain identifying information.

In its initial response Goodyear objected, referring to the "prefatory objections" and adding that it will not furnish any home addresses.  In its supplemental response, Goodyear states that "the answers to these interrogatories are being provided . . . with the assistance of counsel," and Plaintiffs are referred to the verification page.

Referring to the May 1, 2006 letter from Plaintiff's counsel to Goodyear's counsel [Doc. 100, Ex. D][2], it is apparent that even this simple, preliminary interrogatory has not been fully answered. The Court sustains the objection to providing home addresses but directs Goodyear to otherwise fully answer the interrogatory as posed.

Interrogatory No. 2

This interrogatory asks Goodyear, if it claims that the cause of Plaintiffs' injuries was the conduct or negligence of persons not under the control of Goodyear, to "list all facts upon which you base the defense."  In its initial response, Goodyear did not state a specific objection but referred Plaintiffs to its "prefatory objections."  In its supplemental response, Goodyear states that discovery and investigation are ongoing, but that it will more fully respond at the close of discovery.

In its Memorandum Opinion and Order granting in part and denying in part Goodyear's

_____

[2]This is the only document supplied by either party which informs the Court of Goodyear's supplemental responses.  It will hereafter be referred to in this Order as the "May 1 Letter," or Goodyear's "supplemental responses."

Motion to Compel [Doc. 150], filed herein on July 28, 2006, the Court discussed contention interrogatories such as this one and held that Plaintiffs need not respond to Goodyear's contention interrogatories until closer to the end of discovery.  The same ruling applies here, although the discovery process has proceeded somewhat further.  Goodyear is directed to provide a response to this interrogatory, to the extent it can do so at this point in the litigation, and to supplement its answer upon receipt of further information responsive to this interrogatory.

Interrogatory No. 3

This interrogatory seeks detailed specific information about the expert witnesses Goodyear expects to call at trial.  Goodyear initially objected on grounds the interrogatory exceeds the scope of permissible expert discovery and would violate attorney work product doctrine.   In its supplemental response, Goodyear states that it has not yet determined whom it will call as an expert witness at trial but that it will comply with the Court's scheduling order regarding designation of expert witnesses.

This response is sufficient.

Interrogatory No. 4

Plaintiffs ask Goodyear to identify every person known to Goodyear who made "any type of investigation concerning the subject matter of this lawsuit" and to describe the investigation and any report resulting therefrom.

Goodyear initially objected on grounds the request is overly broad and seeks information protected by attorney-client privilege or the work product doctrine.  In its supplemental response, Goodyear again asserts a general claim of privilege.

In the May 1 Letter, counsel for Plaintiffs states that this "response is ok."  As Plaintiffs

include no discussion of this particular interrogatory in their briefing, nor any argument as to attorney-client privilege or work product, the Court assumes that Plaintiffs accept Goodyear's assertion of privilege.  No further response to this interrogatory is required.

<u>Interrogatory No. 5</u>

This interrogatory asks Goodyear to state the facts upon which it relies for each of the affirmative defenses in its Answer.  Goodyear states that it is unable to fully respond, as discovery and investigation are ongoing; however, it will fully respond at the close of discovery.

Again, Goodyear is directed to provide a response to the extent it can do so now, and to supplement its answer as it receives further information.

<u>Interrogatory No. 6</u>

In this interrogatory, Plaintiffs ask Goodyear to identify persons with knowledge about or possession of any model, plat, map, drawing, motion picture, videotape, or photograph "pertaining to any fact or issue involved in this controversy," giving a description of each such item.   Goodyear initially objected on grounds the request is overly broad, burdensome, vague,  and seeks irrelevant information and attorney work product.  In its supplemental response, and without waiving its previous objections, Goodyear states that the accident was investigated by the New Mexico State Police and that Plaintiffs can consult the accident report.

The Court agrees that this interrogatory is overly broad and too vague to be meaningfully answered.  No further response is required.

<u>Interrogatory Nos. 7 and 8</u>

In Interrogatory No. 7, Plaintiffs ask whether Goodyear manufactured the subject tire and, if so, to give the date of manufacture and describe the circumstances under which it left Goodyear's

custody or control.  In Interrogatory No. 8, Plaintiffs ask Goodyear to state whether it sold the subject tire and, if so, to give the date of sale, place of sale and to whom the product was sold.

Goodyear initially objected to both requests, referring only to its "prefatory objections."  In its supplemental responses, it answered No. 7 by giving the date of manufacture and stating that it is impossible to track the distribution and sale of any individual tire.  Goodyear nevertheless provided some information about the distribution of tires with the same "DOT number" as the subject tire.  It answered No. 8 by simply referring to its response to No. 7.  In both responses, Goodyear states that it is not waiving any previous objections.

Plaintiff is dissatisfied with Goodyear's response and feels it should provide more information about the "circumstances in which the tire left Goodyear's control."  In answering No. 7, Goodyear states, under oath, that it cannot provide this information for any individual tire.  This Request regarding "circumstances" is impermissibly vague and, in any event, the Court cannot order a party to provide information which doesn't exist.  Staib v. Vaughn Indus., Inc., 171 F. Supp. 2d 714, 716 (N.D. Ohio 2001).  No further response is necessary to No. 7.

Goodyear gave no information whatsoever in response to Interrogatory No. 8.  As noted above, its general reference to "prefatory objections" is ineffective.  "A partial answer by a party reserving an undisclosed objection to answering fully is not candid.  It is evasive . . . A unilateral declaration that no objections are waived will not be allowed to displace the command of Rule 33 that the party either answer fully or object."  Dollar v. Long Mfg., 561 F.2d 613, 616-17 (5th Cir. 1977).  This interrogatory is not vague, and the Court overrules whatever general objection Goodyear attempts to make here.  No. 8 must be fully answered.

Interrogatory No. 9

This is another contention interrogatory.  Goodyear is directed to respond to the extent it can do so now and to supplement as appropriate.

Interrogatory Nos. 10 and 12

Interrogatory No. 10 asks Goodyear to identify all documents in its possession or control containing "loss adjustment data,"as defined in the interrogatory, for a group of light truck model tires.  Interrogatory No. 12 asks Goodyear to identify all documents or data compilations located anywhere in the world which contain loss adjustment data on any tire lines manufactured by Goodyear.

Goodyear initially objected to these interrogatories as overly broad, burdensome, seeking information regarding dissimilar tires.  Goodyear further objects to the term "loss adjustment data" on grounds it is vague, and because the interrogatory is not limited to the failure mode of the subject tire – that is, tire/belt separation – nor is it limited to a particular time period.

In its supplemental responses to Interrogatory Nos. 10 and 12, Goodyear refers Plaintiffs to its supplemental response to Request for Production No. 11.  In that response, Goodyear gives a lengthy description of the reasons why it would give customers "adjustments," then states that it will produce records of adjustment data for crown separations relating to "Goodyear Radial ATR pathfinder LT2 15/75R1 5 tires made to the same specification as the subject tire and common green tires manufactured at the Valencia plant and adjusted through August 14, 2002, the date of the subject accident . . . ."  Goodyear also states that it maintains loss adjustment data in its adjustment system generally indicating the number of tires adjusted in a given size, type and plant, and the condition code for the adjustment.  Goodyear states also that it does not conduct forensic inspections

of adjusted tires, that tires are adjusted for a variety of conditions observed during a cursory inspection without attempting to determine the underlying cause of the condition found, and that the fact that a tire has been adjusted does not mean that it was defective.

The Court sustains the objections insofar as the interrogatories seek information beyond the subject tire and similar tires, as defined in the Order on Scope of Discovery.[3]  Although Goodyear argued in its briefing on this motion that the loss adjustment data is a trade secret, it did not specifically raise that objection in its responses to this interrogatory, and the Court will not examine Goodyear's "prefatory objections" and try discern which of those preliminary general objections Goodyear intends should apply to any particular discovery response.  In any event, Goodyear has already agreed to provide some loss adjustment data, as noted above, and the Court rejects any trade secret privilege for this information.

Goodyear is ordered to respond to these interrogatories by providing loss adjustment data, in the form of individual claim adjustment records or summary compilations thereof, for the subject tire or similar tires, where the mode of failure was tread separation or crown separation.  The time period for this disclosure is from the date of manufacture of the subject tire to the date of the accident at issue in this case.[4]

_____

[3]Hereafter, when the phrase, "the subject tire and similar tires" is used, it refers to the definition set out in the Order on Scope of Discovery.

[4]This is an approximate five-year period, which is less than Plaintiffs ask for but is in line with prior discovery orders of this Court in similar cases.  Indeed, it is more liberal than is often allowed.  In addition, the Court finds that the period of time between the date of manufacture and the date of the accident is the most relevant period with respect to most of the discovery requests, as related to issues including existence of a defect and notice thereof.

Interrogatory No. 11

Plaintiffs in this interrogatory ask Good

year to identify all radial tire models or radial tire lines manufactured by Goodyear anywhere in the

world for the period from 1993 to the present, and to state certain information for each tire line.

Goodyear objects on grounds, *inter alia*, of overbreadth.

The Court agrees that the interrogatory is overly broad.  Goodyear need not respond to this

Interrogatory.

Interrogatory No. 13

In this interrogatory, Plaintiffs ask Goodyear to identify all books, manuals, newsletters, and

other publications for the period from 1993 to the present, from Goodyear to tire dealers, in which

Goodyear describes the circumstances under which tire warranty adjustments will be paid by

Goodyear.

Goodyear initially objected to the request as overly broad, among other things.  In its

supplemental response, Goodyear identifies a particular Adjustment Procedure Manual and states the

name of the only tire dealer in the United States for the subject tire.

The Court agrees that the request is overly broad.  Goodyear is directed to answer the

interrogatory by providing a clear statement of its adjustment policy or policies in effect during a

period beginning from the date of manufacture of the subject tire until the date of the accident at issue

in this case, with respect to the subject tire and similar tires, and to identify the primary corporate

document in which this policy is set forth.  If any publications distributed to tire dealers contain any

statement of adjustment policy with respect to the relevant tires that differs from that set forth in the

primary document, those should be identified as well.  Plaintiffs are not entitled to a wide array of

documents dealing with other lines or models of tire.

Interrogatory No. 14

Plaintiffs ask Goodyear in this interrogatory to identify each document containing or specifying the design of Goodyear light truck tires, including the subject tire, with respect to several listed characteristics.

Goodyear initially objected on grounds the request is overly broad, seeks irrelevant information and information on dissimilar tires. Goodyear also objected to subparagraph (c) of the interrogatory, to the extent it seeks the formula or recipe for the compounds used in Goodyear tires, information which it asserts is protected from discovery by the trade secret privilege.   In its supplemental response, Goodyear refers Plaintiffs to the specification for the subject tire disclosed in response to Plaintiffs' Request for Production No. 1.

Plaintiffs contend that the response is inadequate, as it is limited to the subject tire.  The Court directs Goodyear to respond to the interrogatory with respect to the subject tire and similar tires. Reference to another document is not sufficient.  Goodyear made a specific "trade secrets" objection in its response to this interrogatory, and Plaintiffs do not discuss trade secrets in their briefing.  The Court finds that the rubber compound formula is a protected trade secret, and Goodyear therefore need not provide any information in its response which would reveal the formula.  However, for any information withheld on the basis of a trade secret privilege, Goodyear must provide Plaintiffs with a Vaughn index, or compilation identifying each withheld document and explaining the reasons asserted for its non-disclosure. *See*, Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973).

Interrogatory No. 15

Plaintiffs ask Goodyear to identify each document by which the design characteristics

(including manufacturing methods or specifications) for Goodyear light truck tires have been changed for the period of time beginning January 1, 1993 through the present.

Goodyear initially objected on grounds the request is overly broad, unduly burdensome, and seeks irrelevant information and information regarding dissimilar tires. Goodyear further objected on grounds the interrogatory is not limited to the time period during which the specification for the subject tire was in effect, and on grounds Plaintiffs seek information on design and manufacturing methods, which are trade secrets protected from discovery.

In its supplemental response, Goodyear argues that Plaintiffs "have not identified a specific alleged design defect in the subject tire." Goodyear also directs Plaintiffs to its supplemental response to Request for Production Nos. 1 and 29. In response to RFP No.1, Goodyear states it will provide mold drawings and specifications for the subject tire; in response to RFP No. 29, it refers Plaintiffs back to its response to this interrogatory.

Goodyear is directed to respond by identifying each document by which the design characteristics, including manufacturing methods or specifications, for the subject tire and similar tires, has been changed for the period of time beginning from the date of manufacture of the subject tire up to the date of the accident at issue in this case. The alleged design characteristics and/or manufacturing defects at issue are those identified in the expert report of Plaintiff's witness, D.R. Osborne, the relevant portion of which is reproduced at Doc. 135, Ex. A – that is, fatigue resistance and durability of the rubber between the belts, and the fact that the tire did not have a nylon overlay.

For any such documents for which Goodyear intends to assert a trade secret privilege, it shall prepare a Vaughn index, as described earlier. However, Goodyear may not assert a trade secret privilege for any material dealing with tire design. Design of the subject tire is at the heart of this

lawsuit, and Goodyear may not protect or withhold documents relating to design on grounds of trade secret.  Any production ordered with respect to documentation of design materials will be done pursuant to the Protective Order in effect in this case [Doc. 52].

Interrogatory No. 16

This interrogatory asks Goodyear to identify each person responsible for any changes in the design specifications or manufacturing process with respect to the subject tire subsequent to the date of its original manufacture.

Goodyear objected initially on grounds of overbreadth and relevance.  In its supplemental response, Goodyear again states that Plaintiffs have not identified a specific alleged design defect in the subject tire; it refers Plaintiffs again to its responses to RFP Nos. 1 and 29; and it states that Jim Stroble, Manager, Product Analysis for Goodyear, is knowledgeable regarding the design of the subject tire.

Goodyear is directed to answer the interrogatory by identifying all persons responsible for changes in design specifications or manufacturing process for the subject tire or similar tires during the period beginning from the date of manufacture of the subject tire to the date of the accident at issue in this case.

Interrogatory No. 17

Plaintiffs in this interrogatory ask Goodyear to identify all internal Goodyear design manuals or other internal documents setting forth guidelines or recommendations for tire design.

Goodyear initially objected on grounds of overbreadth and relevance, seeking information on dissimilar tires, and because the interrogatory asks for internal design information which is protected trade secret.  In its supplemental response, Goodyear again complains that Plaintiffs have not

identified a specific alleged design defect in the subject tire, and it refers Plaintiffs to its response to RFP No. 1, which includes mold drawings and specifications for the subject tire.

Goodyear is directed to identify any internal documents setting forth guidelines or recommendations for tire design, as related to the subject tire and similar tires. As ordered above, Goodyear may not withhold information or documents relating to design on grounds of trade secret. Any such production will be covered by the Protective Order in effect in this case [Doc. 52].

Interrogatory No. 18

In this interrogatory, Plaintiffs ask Goodyear to identify any internal Goodyear testing manuals and testing requirements applicable to all Goodyear tires, but in particular the line of light truck tires.

Goodyear's initial objection is based on overbreadth, irrelevance, seeking information on dissimilar tires, and trade secret. In its supplemental response, Goodyear refers Plaintiffs to its response to RFP No. 2. In that response, Goodyear again asserts that Plaintiffs have not identified an alleged manufacturing defect in the subject tire; that the Quality Assurance Manual for the Valencia plant in 1997 is no longer available, and that Goodyear is producing the available FMVSS 119 test data applicable to the subject tire, subject to the protective order.

Plaintiffs are not satisfied with this response, stating that they are entitled to know in a general sense what sort of procedures govern testing at Goodyear. The Court overrules the objections, in substantial part, and directs Goodyear to identify any internal documents setting forth testing procedures for the subject tire and similar tires for a period beginning from the date of manufacture of the subject tire to the date of the accident at issue in this case. For any such documents as to which Goodyear asserts a trade secret privilege, it is to prepare a Vaughn index as described above.

Interrogatory No. 19

Plaintiffs ask Goodyear to identify all documents which contain information regarding testing of light truck tires with respect to characteristics affecting its propensity (or lack thereof) to fail by tread or belt separation, identifying separately:  (a) design and development documents; (b) quality control documents; and (c) other documents.

Goodyear initially objected on grounds the request is overly broad and seeks irrelevant information and information regarding dissimilar tires.  Goodyear further objected on grounds the interrogatory is argumentative as Goodyear is unaware of any "propensity" of the subject tire to fail by tread or belt separation.  Goodyear also asserted a trade secret privilege.  In its supplemental response, Goodyear states that the subject tire does not have a "propensity to fail by tread or belt separation," and it refers Plaintiffs to its response to RFP No. 2, which states it is producing the FMVSS 119 test data applicable to the subject tire.

The Court agrees that the interrogatory is argumentative.  In addition, the Court ordered Goodyear to respond to Interrogatory No. 18 by providing information regarding testing procedures, including identification of documents.  Goodyear need not respond further to this interrogatory.

Interrogatory No. 20

In this interrogatory, Goodyear is asked to identify all documents which specify quality control procedures related to the manufacturing process or tire characteristics which affect the propensity (or lack thereof) for Goodyear light truck tires to fail by tread or belt separation.

Goodyear initially objected on grounds the interrogatory is overly broad and seeks information on dissimilar tires, that it is argumentative with regard to its statement re "propensity," and that it asks for trade secret information.  In its supplemental response, Goodyear again asserts that the

16

subject does not have propensity to fail by tread or belt separation and states that, once Plaintiffs identify an alleged manufacturing defect in the subject tire, Goodyear will further respond regarding quality control procedures related to the specific alleged manufacturing defect.

Goodyear is directed to respond to this interrogatory by identifying documents setting forth its quality control procedures related to the manufacturing process for the subject tire or similar tires, which procedures are intended to reduce or eliminate tire failure by tread or belt separation.  If Goodyear alleges that any of these documents is subject to trade secret protection, it shall provide a Vaughn index, as described above.

Interrogatory No. 21

In this request, Plaintiffs seek the identity of documents in Goodyear's possession which contain studies, reports, testing or research to determine the causes of tire belt or tread separation with respect to Goodyear tires in general, Goodyear light truck tires, and the subject tire specifically.

Goodyear initially objected on grounds of overbreadth and irrelevance and seeking information related to dissimilar tires, as well as burdensomeness in that it would require a "file-by-file search of each employee to see what text or treatises that employee may have."  In its supplemental response, Goodyear refers Plaintiffs to its responses to RFP Nos. 8 and 10.

In response to RFP Nos. 8 and 10, Goodyear states that there are numerous recognized, authoritative or scientific publications concerning the causes of tread/belt separation in steel-belted radial tires, and it would be unduly burdensome to attempt to list all of those publications.  Goodyear refers Plaintiffs to a number of industry associations which publish such studies; and it cites two other publications which it says are responsive to this request.  Goodyear further states that there are no studies or documents regarding causes of tread/belt separations in the subject tire.

This response is sufficient.  Goodyear need not respond further.

Interrogatory No. 22

Plaintiffs ask Goodyear to identify warnings or instructions issued by Goodyear to anyone regarding precautions to be taken to avoid tread or belt separation in Goodyear radial tires in general, in Goodyear light truck tires, and in the subject tire specifically.

Goodyear initially objected on grounds of overbreadth, irrelevance, and seeking information on dissimilar tires.  In its supplemental response, Goodyear states that warnings and information related to the maximum cold inflation pressure and proper use of the subject tire are molded into the sidewall of the tire, and Goodyear describes its efforts at educating the public and buyers about tire care and service, stating it would make this information available to Plaintiffs.

Plaintiffs contend that the information is unfairly limited to the subject tire.  They ask Goodyear to state whether the information supplied in the response constitutes the only warnings and instructions issued in relation to the subject tire or similar tires.

The Court finds the response to be substantially complete, although Goodyear must also state whether this information constitutes the only warnings and instructions issued in relation to the subject tire or similar tires.

Interrogatory Nos. 23 and 24

In Interrogatory No. 23, Plaintiffs ask Goodyear to state, with regard to the subject tire, the tire's speed rating, and the maximum, minimum and recommended psi tire pressure, under normal vehicle load conditions.  In No. 24, they ask whether Goodyear has ever changed the tire speed rating or recommended pressures since Goodyear began selling light truck tires and, if so, to state what these differences have been for the subject tire, giving the dates and reasons for the changes.

18

Goodyear initially objected to Interrogatory No. 23 by referring to its "prefatory objections." It initially objected to No. 24 with both "prefatory objections" and a complaint of overbreadth in that Plaintiffs seek information beyond the subject tire.   In its supplemental response to both interrogatories, "subject to and without waiving its previous objections," Goodyear gives at least some of the requested information.  Plaintiffs state that because Goodyear supplies information while at the same time reserving all its objections, they are unable to ascertain whether there is additional information which is being withheld.

Goodyear is directed to answer these interrogatories fully with respect to the subject tire and similar tires, giving all the information asked for in the format of the question.

<u>Interrogatory No. 25</u>

Plaintiffs ask Goodyear, if it answered "yes" to the preceding interrogatory, to state what the average tire mileage life is for each size Goodyear light truck tire.

Goodyear objected on several grounds and further stated that, as service life of a tire is a function of many different factors, there is no "average tire mileage life" for any steel-belted radial tires, including the subject tire.

The Court sustains the objection to this interrogatory, as service life is not relevant to the claims and defenses in this case.

<u>Interrogatory Nos. 26, 27 and 28</u>

In Interrogatory No. 26, Plaintiffs ask Goodyear whether a gum strip, belt wedge or any rubber material is used between the edges of the steel in Goodyear light truck tires and, if so, to identify the specific materials used.  In No. 27, they ask whether any of these three items – gum strips, belt wedges or rubber material – was used in the subject tire.  In No. 28 they ask, if Goodyear

answered yes to either of the previous two interrogatories, to give further information about the material. They further ask Goodyear, if there was a period of time during the manufacturing history of their light truck tires in which such material was not used, or was changed, to give the dates and reasons for the change.

Goodyear initially objected on grounds of overbreadth, and seeking information about dissimilar tires. Goodyear also asserts a trade secret privilege in that the questions seek to expose the formula or "recipe" of the compounds used in the subject tire. In its supplemental response, Goodyear states that it will answer Interrogatory No. 27, which was limited to the subject tire, separately and subject to the protective order. It also refers Plaintiffs to its response to RFP No. 1, in which it says it will provide mold drawings and specification for the subject tire.

Goodyear is directed to fully respond to Interrogatory Nos. 27 and 28, with reference to the subject tire and similar tires. No further response is necessary to Interrogatory 26. If Goodyear intends to assert a trade secret privilege as to any of the information requested, it must produce a Vaughn index.

Interrogatory No. 29

This interrogatory asks Goodyear to identify each "performance change" for Goodyear light truck tires "since production of this model tire began."

Goodyear objects on several grounds, including vagueness, stating it does not know what Plaintiffs mean by "change in the performance." This objection is sustained, and Goodyear need not provide further answer to this interrogatory.

Interrogatory No. 30

This interrogatory asks Goodyear to identify each "manufacturing change," giving dates and

reasons, for Goodyear light truck tires.

Goodyear initially objected on grounds of overbreadth, undue burden, vagueness, and seeking irrelevant information and information on dissimilar tires, as well as trade secret privilege.  In its supplemental response, Goodyear refers Plaintiffs to its response to RFP Nos. 1 and 29, in which it states it will provide mold drawings and specifications for the subject tire.

Plaintiffs state that they need a list of manufacturing changes, change orders, and implementation of such changes for purposes of evaluating the product history.  With this clarification, Goodyear should provide information on any changes to the mold drawings and specifications for the subject tire.  A Vaughn index must be produced, if Goodyear asserts trade secret privilege for any of this information.

Interrogatory No. 31

Plaintiffs ask Goodyear to identify at which plants Goodyear light truck tires have been made, and the dates of manufacture.  Goodyear objects on grounds of overbreadth and undue burden; without waiving these objections, it provides some information as to the subject tire in its supplemental response.

The Court sustains the objection.  This interrogatory need not be answered further.

Interrogatory No. 32

Plaintiffs ask Goodyear to list the number of Goodyear light truck tires produced on a weekly or monthly basis at each Goodyear plant during the last 10 years.

Goodyear objects on grounds of overbreadth, undue burden and seeking information on dissimilar tires.  Without waiving the objections, Goodyear states it will provide production data concerning the number of Pathfinder tires manufactured to the same specification as the subject tire

21

and common green tires manufactured at the Valencia plant, subject to the protective order.

Plaintiffs argue that they are "entitled to evaluate how Goodyear conducts its business, including the manufacture of tires at its various plants." [Doc. 100, at 16]. Plaintiffs are incorrect in this; the fact that they filed a lawsuit based on tread separation in a Goodyear tire does not give them such wide-ranging license.

The Court finds that the arguable relevance of this information does not outweigh the burden involved of providing it. This interrogatory need not be answered further.

Interrogatory No. 33

This interrogatory asks Goodyear to identify by name and other contact information the following Goodyear employees: (a) the individual who built the subject tire or, alternatively, all individuals who worked as tire builders at the subject plant during the week the subject tire was manufactured; (b) all other persons who worked in the plant that week and who may have participated in the manufacturing process; (c) all persons who worked in the quality control portion of the plant that week; Plaintiffs also ask for further information as to these people.

Goodyear initially objected on grounds of overbreadth, undue burden, and irrelevance. Goodyear supplements this response by stating that it is impossible to trace any individual tire through the manufacturing process, and it is not possible to identify the individual who built the subject tire, if the "tire builder sticker" is no longer on the tire. Goodyear identifies Carlo Cipollitti, the former "QTech Manager" at the plant, as someone knowledgeable about quality control at the plant during the applicable time period.

While payroll or human resources records should disclose who was working at the plant during the week the tire was manufactured, given the impossibility of matching any particular

22

employee with the manufacture of a particular tire, in the absence of a tire builder sticker, the burden of production far outweighs the relevancy.  The objection is sustained.

Interrogatory No. 34

This interrogatory asks that Goodyear identify every document constituting or recording a complaint or other expression of a problem by any Goodyear employee working as part of the manufacturing or quality control process applicable to Goodyear light truck tires "in the Goodyear plant" for the years 1993-2003 which deals with quality of components, products, tires, and other matters.[5]

Goodyear initially objected on grounds the request is overly broad, unduly burdensome, and seeks irrelevant information and information regarding dissimilar tires.  Goodyear stated that the interrogatory seeks "virtually any type of 'complaint' voiced by a Goodyear USA employee on virtually any subject during a ten-year period."  No supplemental response has been provided to the Court.

The Court agrees that the interrogatory is overly broad.  Goodyear is directed to respond by identifying any document constituting or recording a complaint made by any Goodyear employee during the period beginning from the date of manufacture of the subject tire to the date of the accident at issue in this case, that relates to the quality of components, or final product quality, for the subject tire or similar tires.

---

[5]Neither party supplied a complete copy of the original Interrogatories or Requests for Production, which apparently included Plaintiff's definitions of particular terms.  Therefore, the Court is only guessing that Plaintiff's use of the term "the Goodyear Plant" in this and other discovery requests refers to the Valencia, Venezuela plant where the subject tire was built in 1997.

Interrogatory No. 35

Plaintiffs ask Goodyear to state the average profit per tire to Goodyear USA for each Goodyear light truck tire sold in the United States in 1993-2003.

Goodyear initially objected on grounds of overbreadth, undue burden, seeking irrelevant information or information regarding dissimilar tires.  Goodyear also cited trade secret protection. In its supplemental response, Goodyear expands on its relevance objection, stating that Plaintiffs have identified no basis for seeking punitive damages in this case.

Plaintiffs argue that the information is sought not only in support of its request for punitive damages, but also as relevant to the manner in which financial decisions drive and implicate design, development and manufacturing decisions.

While certain financial information about a corporate defendant is relevant on the issue of punitive damages, the Court does not find that profit-per-tire information would lead to discovery of information relevant to the calculation of punitive damages.  The basis put forth by Plaintiffs is too remote to support a claim of relevance, even for discovery purposes.  The objection is sustained.

Interrogatory Nos. 36 and 37

In Interrogatory No. 36, Plaintiffs ask Goodyear to describe the training given to persons who build or assemble tires, or who operate tire-building equipment, with respect to Goodyear light truck tires and the subject tire specifically, in "the Goodyear plant."  In No. 37, they ask Goodyear to identify the types of training documents and aids that were available, at the time the subject tire was built, to Goodyear employees who build tires or operate tire-building equipment, "at the Goodyear plant."

Goodyear initially objected to these interrogatories as overly broad and seeking irrelevant

information and information about dissimilar tires.  In its supplemental responses, Goodyear further objects in that Plaintiffs have not alleged that inadequate training of tire builders was related to the tread-belt separation that occurred in this case.  Goodyear further states that tire builder training materials and/or manuals used at the Valencia plant in 1997 are no longer in existence.

Plaintiffs did not allege inadequate training in their complaint.  Their theory is that the tire was defective due to insufficiently "robust" rubber, and failure to include a nylon overlay as part of the building process.  Discovery of other potential claims, *i.e.*, failure to train, goes beyond the scope of Rule 26 and this Court's Order on the Scope of Discovery.  No further response is necessary.

Interrogatory No. 38

Plaintiffs ask Goodyear to identify and describe any recall campaign conducted by Goodyear since January 1, 1993, to date with respect to Goodyear light truck tires and, specifically, the subject tire.

Goodyear objected on grounds of overbreadth, seeking information regarding dissimilar tires and failure modes, and relevance.  No supplemental response has been provided to the Court.

Goodyear is directed to answer the interrogatory by identifying and describing any recall campaigns relating to the subject tire or similar tires and dealing with component failure and/or tread separation, during the period running from the date of manufacture of the subject tire to the date of the accident at issue in this case

Interrogatory No. 39

Plaintiffs in this interrogatory ask Goodyear to state whether it has ever considered any design change or manufacturing process change to reduce the likelihood of tread, ply or belt separation, regardless of whether the change was actually implemented, and, if so, to describe each such change,

describe all cost analysis conducted in connection with the change, identify the groups and persons responsible for evaluating, implementing, and making decisions with regard to each such change.

Goodyear initially objected on grounds the interrogatory is overly broad and seeks irrelevant information and information regarding dissimilar tires. In its supplemental response, Goodyear refers Plaintiffs to its response to RFP Nos. 1 and 29, in which Goodyear agrees to provide mold drawings and specification for the subject tire.

The Court finds that Goodyear's response to Interrogatory No. 15, as directed above, will sufficiently answer this interrogatory, except that Goodyear is further directed to identify any proposed design change or manufacturing process intended to reduce the likelihood of tread or belt separation in the subject tire or similar tires, which it considered but decided not to implement, stating the reasons for this decision and the persons who made the decision.

### *Requests for Production*

As noted above, Goodyear includes an "Introductory Statement and Prefatory Objections" at the beginning of its initial Objections to Plaintiff's Requests for Production. For the reasons given above, the Court finds these "prefatory objections" ineffective and will not consider them.

<u>RFP No. 1</u>

In this Request, Plaintiffs ask Goodyear for copies of the specifications, including belt skim stock specifications, steel cord specifications, inner liner specifications, green tire specifications and cured tire specifications, along with a number of other types of documents, for the subject tire. The Request states it is meant to include documents related to changes in design and manufacture, and documents both prior to and subsequent to the manufacture of the subject tire.

Goodyear initially objected on grounds the request is overly broad, unduly burdensome, and

seeks irrelevant information and information on dissimilar tires. Goodyear further objected to the extent Plaintiffs seek information pertaining to tire components not at issue in this litigation, and to the extent they seek the formula or "recipe" for Goodyear's skim stock compound which is protected by the trade secret privilege. In its supplemental response, Goodyear states that it will provide mold drawings and specification for the subject tire, subject to the protective order.

Goodyear's response that it will provide specifications for the subject tire appears to answer this RFP in full with respect to specifications. To the extent these specifications differ for "similar tires," Goodyear must provide those as well. Documents related to changes in design and manufacture were discussed above, in relation to Plaintiffs' Interrogatory Nos. 14, 15, 17, 30 and 39. All documents discussed or identified in connection with those interrogatories must also be produced. A Vaughn index must be prepared for any documents as to which Goodyear asserts a privilege.

RFP No. 2

In this Request, Plaintiffs ask Goodyear to produce all documents, including electronic documents, photographs and videotapes "relating to" the manufacture, testing, inspection and quality control procedures for steel belted radial passenger and light truck tires manufactured at "the Goodyear Plant" from January 1, 1997 to the present, including quality control manuals and specifications relating to quality control.

Goodyear objected initially on grounds of overbreadth, undue burden, and seeking irrelevant information and information relating to dissimilar tires. Goodyear also asserted a trade secret privilege. In its supplemental response, Goodyear states that the Quality Assurance Manual for the Valencia plant in 1997 is no longer available, and states further that it is producing "the available FMVSS 119 test data" applicable to the subject tire.

27

Plaintiffs have produced their expert's affidavit, which specifies particular defects in the subject tire.  They are entitled to request documents which might reveal problems in the manufacturing or quality control process at the Valencia plant in 1997; however, the Court agrees with Goodyear that this Request is overly broad.  "All documents . . . relating to the manufacture, testing, inspection and quality control procedures" is too nebulous and could include a universe of documents, and the group of all steel belted passenger and light truck tires is too broad, as discussed at length in this and earlier Orders.

The Court orders Goodyear to respond to this Request by producing all documents discussed or identified in its responses, as ordered above, to Interrogatory Nos. 18, 19, 20, 34 and 37, which deal with Goodyear's  manufacturing, testing, and quality control process with reference to the subject tire and similar tires.  If the 1997 quality control manual no longer exists, the Court cannot order Goodyear to produce it; however, if other quality control documents exist which are responsive to this request, Goodyear must produce them.  Goodyear must identify any documents as to which it asserts a privilege and produce a <u>Vaughn</u> index.

<u>RFP Nos. 3 and 5</u>

In RFP No. 3, Plaintiffs request documentation relating to contamination or the potential for contamination in the tire building process.  In RFP No. 5, they ask for documentation relating to or discussing overaged stock or components including body plies, cushions, wedges, and steel belts.

Goodyear objected to these Requests on grounds they are vague, overly broad, unduly burdensome and seek irrelevant information and information regarding dissimilar tires.  Goodyear points out that Plaintiffs have not alleged any defect in the subject tire relating to contamination nor to overage stock or components.

In their complaint, Plaintiffs allege a defect in the manufacturing process. However, the Court has seen nothing in any of the materials generated thus far in this case to support the specific allegation that contamination occurred during the manufacturing process with respect to the subject tire, nor that it was built with overage components. The objection on grounds of relevance is sustained.

RFP No. 4

This Request seeks all documentation "relating to the building, testing and inspection" of passenger and light truck tires and/or the training of tire builders.

Goodyear objects on grounds of overbreadth, undue burden, vagueness, trade secret privilege, and seeking irrelevant information and information regarding dissimilar tires. Goodyear also states that the tire builder training materials and manuals used at the Valencia plant in 1997 are not longer in existence.

In connection with its Order on Interrogatory Nos. 18 and 20 the Court directed Goodyear to identify documents related to testing and quality control materials, having to do with the subject tire and similar tires. Any documents so identified must be produced in response to this Request. The remainder of the Request is overly broad, and no further response is required.

RFP No. 6

In this Request, Plaintiffs seek documentation relating to the use or potential use of nylon overlays, or belt edge strips, in passenger or light truck tires.

Goodyear initially objected on grounds of overbreadth, undue burden, seeking irrelevant information and information regarding dissimilar tires. In its supplemental response, Goodyear states that the subject tire did not have a nylon overlay or nylon belt edge strips.

Plaintiffs argue that they are entitled to know whether Goodyear ever considered or analyzed the use of nylon overlays or belt edge strips in these tires.  The question of nylon overlays is one of Plaintiffs' claims in this lawsuit, and their expert witness cites the lack of nylon overlays as one of the defects in this subject tire.[6]  With regard to belt edge strips, in its Order with respect to Interrogatory No. 27 above, the Court directed Goodyear to state whether a gum strip, belt wedge, or any rubber material is used between the edges of the steel in the subject tire or similar tires and, if so, to respond to Interrogatory No. 28 by giving certain further information about the material; and further, if there was a period of time in the manufacturing history of such tires when the material was not used, or was changed, to give the dates and reasons for the change.

For its response to this Request, Goodyear is directed to produce any documentation regarding changes in design of the subject tire and similar tires with respect to nylon overlays or belt edge strips.  In addition, if Goodyear ever considered using nylon overlays or belt edge strips in the subject tire or similar tires, it is to produce any documentation of that analysis and decision-making process, even if such decisions were not implemented.  Further, Goodyear must produce the final reports of the "Tread-Throw Team" and "Crown Integrity Team" as discussed in the Court's Order on Scope of Discovery [*See* Doc. 164, at 25-26].

<u>RFP No. 7</u>

In this Request, Plaintiffs seek documentation relating to property damage claims, personal injury claims and lawsuits arising out of separations or alleged separations in Goodyear steel belted

---

[6]Plaintiffs' expert excluded as causes of the tire failure any road hazard, over deflected operation or any in-service use.  Rather, the expert opines that the interply belt rubber "was not sufficiently robust," and that it "failed causing the separation of the steel belts" that led to tread detachment.  Plaintiffs' expert also faults the failure to use a nylon overlay as a design defect. [Doc. 135, Ex. A].

radial passenger and light truck tires manufactured at "the Goodyear plant." Plaintiffs specify a wide range of documents which they expect Goodyear to produce in response to this Request, including printouts of claims and documents prepared by Goodyear Consumer Relations Department concerning telephone calls and complaints to its 800 number, as well as copies of complaints filed in lawsuits, discovery responses of Goodyear, expert reports, and trial testimony.

Goodyear initially objected on grounds of overbreadth, undue burden, seeking irrelevant information and information on dissimilar tires. Goodyear also raises attorney/client privilege and work product protection. In its supplemental response, Goodyear states that this is the first lawsuit seeking recovery for alleged personal injury involving an alleged tread/belt separation in a Goodyear Radial ATR Pathfinder LT2 1 5/75R 15 tire.

Goodyear states further, however, that it will provide Plaintiffs with a list of personal injury and property damage claims involving an alleged tread/belt separation in a Goodyear Radial ATR Pathfinder LT215/75R15 tire [the Court assumes this is the same as the tire identified a few lines above] built to the same specifications as the subject tire and common green tires manufactured at the Valencia plant and received by Goodyear before August 14, 2002, the date of the subject accident. The addresses of customers making these claims is withheld for privacy reasons. In addition, Goodyear states it will provide a list of lawsuits dealing with the same type of claims.

Plaintiffs state in the May 1 Letter that they received a sheet with some information that appears to be claim-related, but they are not certain it is responsive to this Request. In addition, they state that they have not received any lawsuit information.

Information as to these other claims and lawsuits, both prior to and after the date of the accident in question, is potentially relevant to issues of notice, existence of a defect, and punitive

damages.

Goodyear is directed to respond to this Request, to the extent it has not already done so, by providing the information it proposed to provide, as above, including a complete list of claims involving the subject tire or similar tires, from a date beginning from the date of manufacture of the subject tire to the date of the accident at issue in this case.  In addition, Goodyear must provide a list of lawsuits for the same tire group and same time period, stating for each such suit the title of the case, court in which the action was brought, and the docket number.  No further information need be produced in response to this Request; specifically, Goodyear need not provide the home addresses of claimants or, with respect to the lawsuits, discovery materials or trial testimony.

RFP No. 8

In this Request, Plaintiffs ask Goodyear to produce documents discussing causes and potential causes for separations, including Goodyear documents LREOO326-LRE332.

Goodyear initially objected to the Request as overly broad, unduly burdensome, seeking irrelevant information and information regarding dissimilar tires.  Goodyear further objected insofar as the documents specifically cited refer to Load Range E light truck tires, which are made to different specifications, cured in different molds, use different green tire carcasses, with different tread designs, and different vehicle applications from the subject tire.  Goodyear also asserts attorney/client privilege and work product protection.

In its supplemental response, Goodyear states that there are numerous recognized, authoritative or scientific publications concerning the causes of tread/belt separation in steel-belted radial tires, and it would be unduly burdensome to attempt to list all of those publications.  Goodyear refers Plaintiffs to a number of industry associations which publish such studies; and it cites two other

publications which it says are responsive to this request. Goodyear further states that there are no studies or documents regarding causes of tread/belt separations in the subject tire.

This response is sufficient.

RFP No. 9

In this Request, Plaintiffs ask Goodyear to produce all documentation relating to the maintenance and/or repair of "the Goodyear plant" and equipment used to manufacture, repair and/or inspect steel belted radial passenger and light truck tires, from January 1, 1997 to the present. Plaintiffs then provide a list of the type of materials they would consider responsive to this Request, including documents relating to the roof of the plant, the air conditioning and heating system in the building, and malfunctions in the equipment, including the tire building and curing machines.

Goodyear initially objected to the Request as overly broad, unduly burdensome, seeking irrelevant information and information on dissimilar tires, and not reasonably limited to the allegations in this case or to the relevant portions of the manufacturing equipment in this case.

While Plaintiffs allege a manufacturing defect, there is no allegation in the complaint, nor in any material generated thus far in the case, to indicate that something was wrong with the building wherein the tire was manufactured. It is even further afield to request information regarding building maintenance for the current year, when the subject tire was built in 1997. The Request is extremely overly broad. Any arguable relevance is outweighed by the burden and cost of production. No further response to this Request is required.

RFP No. 10

This Request seeks documents discussing causes and potential causes for separation.

Goodyear objected on numerous grounds, including the fact that this Request repeats what

Plaintiffs asked for in RFP No. 8.  The Request is indeed repetitive, and the objection is sustained.

RFP Nos. 11 and 12

In RFP No. 11, Plaintiffs seek all documents relating to the adjustment of light truck tires manufactured with the same belt skim stock as the subject tire; and in RFP No. 12, they seek documents relating to the adjustment of steel belted radial passenger and light truck tires manufactured at the Goodyear plant from January 1, 1997 to the present, bearing codes for vibration, ride disturbance, or separation related adjustments.  Plaintiffs delineate the types of documents which they would consider responsive to the Request and ask Goodyear to produce a summary of this adjustment data, stating for each tire the model and size, the month and year of manufacture, the date of adjustment or rejection of the claim, and the state where the claim was made.

Goodyear initially objected to both Requests on grounds of overbreadth, undue burden, seeking irrelevant information or information regarding dissimilar tires, and because the Request is not limited as to time, failure mode of the subject tire, or subject plant.  Goodyear also cited attorney/client privilege and work product immunity, and objected on grounds the Request requires it to create documents not in existence.

In its supplemental responses, Goodyear gives a lengthy description of the reasons why it would give customers "adjustments," then states that it will produce records of adjustment data for crown separations relating to "Goodyear Radial ATR pathfinder LT2 15/75R1 5 tires made to the same specification as the subject tire and common green tires manufactured at the Valencia plant and adjusted through August 14, 2002, the date of the subject accident . . . ."

In its Order on Interrogatories 10 and 11 above, which deal with similar information, the Court sustained Goodyear's objections insofar as the interrogatories seek information beyond the

subject tires and similar tires as defined in the Order on Scope of Discovery, and ordered Goodyear to respond to these interrogatories by providing loss adjustment data, in the form of individual claim adjustment records or summary compilations thereof, for the subject tire or similar tires, where the mode of failure was tread separation or crown separation, for a period from the date of manufacture of the subject tire to the date of the accident at issue in this case.

Any documents which contain or constitute loss adjustment data, as that term is defined above, and which meet the above criteria as to tire group, mode of failure, and time period, must be produced. Goodyear is not required to compile the summary data requested by Plaintiffs. For any such material as to which Goodyear asserts a privilege, it must produce a <u>Vaughn</u> index.

RFP No. 13

In this Request, Plaintiffs seek all documents related to adjustment of steel belted radial passenger and light truck tires manufactured with nylon overlays or belt edge strips, bearing separation related adjustment codes. Plaintiffs again describe the types of documents they want and ask Goodyear to produce a summary of this adjustment data.

Goodyear objected on grounds of overbreadth, undue burden, seeking irrelevant information and information regarding dissimilar tires, asserted attorney/client and work product protection, and objected on grounds the Request requires it to create documents not in existence.

The objections are sustained. Adjustment data beyond the group of subject tires and similar tires goes beyond the scope of discovery ordered in this case.

RFP No. 14

Plaintiffs ask Goodyear to produce all documents relating to the use or potential use of belt edge wraps or belt edge insulation strips in steel belted radial passenger and/or light truck tires,

including interoffice correspondence, reports, memoranda, and tire specifications.

Goodyear objected on grounds of overbreadth, undue burden, seeking irrelevant information and information regarding dissimilar tires, and attorney/client and work product protection.

The information which the Court ordered produced in response to RFP No. 6 will be sufficient to answer this Request as well.  No additional production is necessary.

RFP No. 15

Plaintiffs ask Goodyear to provide copies of specifications, including belt skim stock, inner liner, green tire and cured tire specifications for all Goodyear 16 inch steel belted radial passenger or light truck tires manufactured for sale in several specified regions of the world.

Goodyear objected on grounds of overbreadth, undue burden, irrelevance, dissimilar tires, and trade secret.  In its supplemental response to RFP No. 1, to which Goodyear refers Plaintiffs, Goodyear states that it is providing mold drawings and specifications for the subject tire, subject to the protective order.

Goodyear is directed to provide specifications for the subject tire and similar tires.  All such disclosure is subject to the Protective Order in effect in this case [Doc. 52].  No other production is required.

RFP No. 16

In this Request, Plaintiffs seek all documents relating to Goodyear's analysis of the performance of light truck tires manufactured at the Goodyear plant from January 1, 1997 to the present, including documents relating to worn tire surveys and actual tires and cross sections of tires.

Goodyear objected on grounds of overbreadth, undue burden, relevance, dissimilar tires, and the fact that the Request is not limited to the failure mode of the subject tire, that is, tread/belt

separation and detachment.  In its supplemental response, without waiving its previous objection, Goodyear states "none regarding any analysis of adjustments relating to crown separations" in tires made to the same specification as the subject tire.

The Court sustains Goodyear's objection.  The Court already ordered that tire service life is not a relevant issue in this case.  No further production is necessary with respect to this Request.

RFP No. 17

In this Request, Plaintiffs ask Goodyear to produce a color copy of any documents, including cured tire defect manuals, that identify or discuss defects in cured tires manufactured by Goodyear. Plaintiffs specifically refer to a Cured Tire Defect Manual for the Goodyear plant in effect in 2002 and any subsequent replacement manuals.  Goodyear objected on grounds of overbreadth, undue burden, irrelevance, and dissimilar tires.

If Goodyear utilizes documents which may be identified as cured tire defect manuals, as described in the Request, it is directed to produce the portions of any such documents used in the Valencia, Venezuela plant in 2002 which relate to the subject tire or similar tires.

RFP No. 18

This Request asks Goodyear to produce all documents relating to, discussing or analyzing the inner liners used in light truck tires manufactured at the Goodyear plant.  Plaintiffs set forth in detail the kinds of documents they seek.

Goodyear objected on grounds of overbreadth, undue burden, irrelevance, and dissimilar tires. It further objected on grounds the Request seeks the formula or recipe for rubber compounds, which is protected by trade secret privilege.  In its supplemental response, Goodyear states that there are no documents responsive to this request with respect to the subject tire.

The defects identified in Plaintiffs' expert report include the fact that the interply belt rubber was not sufficiently "robust" to withstand normal forces on the tire, and it failed, causing separation of the steel belts and leading to tread detachment, and the fact that the tire did not have a nylon overlay. [Doc. 135, Ex. A]. Inner liner defects are not relevant to the claims and defenses in this case, and the objection is sustained. Goodyear need not produce the requested information.

RFP No. 19

This request seeks documents relating to the scrapping of passenger and/or light truck tires manufactured at the Goodyear plant for a period beginning two years prior to the date of manufacture of the subject tire. Goodyear objected on various grounds and stated further that scrap records regarding the subject tire, and those made to the same specifications, in 1997 are no longer available.

This response is sufficient; nothing further is required in response to this Request.

RFP No. 20

In this Request, Plaintiffs seek all documents, including photographs and videotapes, relating to plant inspections of Goodyear tire plants, including court ordered inspections in other litigation.

Goodyear initially objected to the Request on grounds of overbreadth, undue burden, irrelevance, dissimilar tires, and the fact that the Request is not limited to the subject plant. Goodyear further cited trade secret, attorney/client, work product and self critical analysis privileges. In its supplemental response, Goodyear states that it is not aware of any photographs or videotapes arising out of a court-ordered inspection of the Valencia plant.

The Request is overly broad, even if limited to the Valencia, Venezuela plant. The term "plant inspections" is undefined and could refer inspections concerning labor conditions, sanitation in food service areas, and any number of other types of "inspections." There is no contention of a defect in

the manufacturing plant itself, but rather of defects in not having "robust" rubber and not utilizing nylon overlays.  In addition, Plaintiffs put no time limitation on their Request.  The objection is sustained.  Goodyear need not respond further.

RFP 21

This Request seeks, simply, "[a]ll documents concerning the manufacture, design and/or safety of the product."

Goodyear objected to this Request on grounds it is overly broad, unduly burdensome, vague and ambiguous, and seeks irrelevant information.

The general information sought is not necessarily irrelevant, but the Request is overly broad and is an unnecessary catch-all Request, covering information dealt with in other, more focused discovery requests.  Goodyear need not produce anything in response to this Request.

RFP No. 22

This Request asks Goodyear to produce "[a]ll documents created by any employee of Goodyear (other than those produced by this Defendant in this lawsuit) which concern, refer to or relate to the product and/or tire failure claims."

Goodyear initially objected to this Request on grounds it is overly broad, unduly burdensome, and seeks irrelevant information; in addition, it is vague and ambiguous particularly with respect to the phrase "the product and/or tire failure claims."  Goodyear also asserted attorney/client and work product protection.  In its supplemental response, Goodyear states "it is unduly burdensome and practically impossible for a company such as Goodyear USA to comply with this open-ended request. To respond to this request, Goodyear USA would have to review thousands of documents from multiple files at multiple locations to locate those that are potentially responsive."

39

The Court agrees that the Request is overly broad and burdensome. Indeed, as written, Goodyear could not possibly comply. As was the case with RFP No. 21, this catch-all Request covers information dealt with in other, more focused discovery requests. The Court sustains the objection. Goodyear need not produce anything in response to this Request.

RFP No. 23

This Request asks Goodyear to produce all documents which it has provided to any governmental agency, state or federal, in this country or any other country, which concern, refer to or relate to the product and/or tire failure claims or tire safety claims.

Goodyear initially objected on grounds the Request is overly broad, unduly burdensome, vague and ambiguous, and seeks irrelevant information. Goodyear noted further that the Request is not reasonably limited in time, to the subject plant, or to the failure mode of the subject tire. Goodyear also asserted attorney/client, work product, and self-critical analysis privilege. In its supplemental response, Goodyear refers Plaintiffs to its response to RFP No. 35, which states that there have been no written communications between Goodyear and any governmental entity regarding the subject tire or tires made to the same specifications.

To the extent that documents were provided to state or federal governmental agencies, they are "public record" documents, and Plaintiffs have the same capability of retrieving those documents as does Goodyear. Plaintiffs may seek and procure those records, if any, directly from the state or federal agencies.

RFP Nos. 24 and 26

In these Requests, Goodyear is asked to produce all documents identified in its responses to Interrogatory Nos. 10 and 12.

40

See discussion above with respect to RFP Nos. 11 and 12, in which Goodyear was directed to produce certain documents dealing with loss adjustment data.  No further response to these Requests is necessary.

RFP No. 25

In this Request, Plaintiffs ask Goodyear to produce one or more catalogs or similar documents sufficient to identify all tire lines or models manufactured and/or sold by Goodyear in the United States from 1993 until the present.

Goodyear's objections on grounds of overbreadth and relevance are sustained.  The Request is beyond the scope of discovery previously outlined by the Court.

RFP Nos. 27 through 33

In these Requests, Goodyear is asked to produce all documents identified in its responses to Interrogatory Nos. 13-15 and 17-20.  Goodyear responded to these Requests by asserting the same objections which it made to the Interrogatories in question.

To the extent the Court, in the above discussion of these Interrogatories, directed Goodyear to identify any documents, those documents should be produced along with any necessary Vaughn indexes.

RFP No. 34

In this Request, Plaintiffs ask Goodyear to produce copies of all research papers, treatises or other publications published outside Goodyear USA by Goodyear USA or its employees related to the subject of tread or belt separation in steel belted radial tires, including passenger or light truck tires.

Goodyear initially objected on grounds of overbreadth, undue burden, seeking irrelevant

41

information or information regarding dissimilar tires, and on grounds that the information is a matter of public record, equally available to Plaintiffs' counsel.  In its supplemental response, Goodyear states that there are no such documents regarding the subject tire or tires made to the same specifications.

Goodyear is directed to produce any such publications which deal with tread or belt separation in the subject tire or similar tires, as defined in the Order on Scope of Discovery.

RFP No. 35

Plaintiffs ask Goodyear to produce copies of all correspondence and other types of communications between it and certain listed entities, including governmental agencies and other companies, that deal with tread or belt separation in steel belted radial tires in any line of Goodyear tires, or in Goodyear light truck tires, or in the subject tire.

Goodyear initially objected on various grounds, including self-critical analysis privilege, and in its supplemental response it states that there have been no communications between Goodyear and any governmental entity regarding tread/belt separation in the subject tire.

The Court does not require Goodyear to produce documents that do not exist.  However, to the extent Goodyear has documents that deal with similar tires, as defined in the Court's Order on Scope of Discovery, it should produce those documents.  For any such documents as to which it asserts a privilege, Goodyear shall produce a Vaughn index.

RFP No. 36

Plaintiffs ask Goodyear to produce all documents identified in the response to Interrogatory No. 23.  Goodyear objected on various grounds.  As that interrogatory did not ask Goodyear to identify any documents, the objection is sustained.

RFP No. 37

Plaintiffs ask Goodyear to produce all documents identified in the response to Interrogatory No. 34.  Goodyear objected on various grounds.

Goodyear must produce any documents identified in its response to Interrogatory No. 34, as directed in the above discussion of that Interrogatory.

RFP No. 38

Plaintiffs in this Request ask Goodyear to produce documents reflecting its internal determination of the speed rating, maximum, minimum and recommended tire pressure for Goodyear light truck tires from 1990 to the present.  Goodyear objected on various grounds, including overbreadth.

Plaintiff's expert opined that none of these factors are the cause or contributing cause of the accident.  However, Goodyear contends that under-inflation or other forms of consumer misuse are possible causes of the accident; thus, the information is relevant and must be produced, but only for the period beginning from the date of manufacture of the subject tire to the date of the accident at issue in this case.

RFP No. 39

Plaintiffs ask Goodyear to produce all documents explaining how the tire speed rating or the maximum, minimum and recommended tire pressure of Goodyear light truck tires was decided. Goodyear objected on various grounds, including overbreadth.

As with the preceding Request, this information is relevant and the Court orders it produced for the period beginning from the date of manufacture of the subject tire to the date of the accident at issue in this case.

RFP No. 40

In this Request, Plaintiffs ask Goodyear to produce all documents showing how Goodyear calculated or determined the average tire mileage life to be expected from Goodyear Durango Radial LT Tires.  Goodyear objected on various grounds.

As tire service life is not relevant to the claims or defenses at issue in this case, Goodyear need not respond to this Request.

RFP Nos. 41 and 42

In Request No. 41, Plaintiffs ask Goodyear to produce copies of the master specification for tires from Goodyear USA's home office under which the LT215/75R15 Goodyear Radial ATR tire was manufactured.  In No. 42, Plaintiffs ask for copies of master tire specifications used at the Goodyear plant where the subject tire was manufactured.

Goodyear objected on various grounds, including overbreadth; but in its Response to RFP No. 1, Goodyear states it will provide mold drawings and specification for the subject tire.

Goodyear is directed to provide all specifications for the subject tire and similar tires from the date of manufacture of the subject tire to the date of the accident at issue in this case.

RFP No. 43

This Request reads, "Produce the tire fitment guides for Goodyear light truck tires."

Goodyear initially objected on grounds of overbreadth, undue burden, and relevance.  In its supplemental response, Goodyear states, "the 'Tire Guide' by Bennett Garfield is a matter of public record" and therefore equally accessible by Plaintiffs.  Plaintiffs complain that public records are not the same as the guide issued or suggested by the manufacturer.

Neither party explains what a "fitment guide" is, and the Court cannot therefore ascertain

44

whether such a document is relevant to the claims and defenses in the case. As Plaintiff has not established relevance, Goodyear need not provide anything further with respect to this Request.

RFP Nos. 44 and 45

Plaintiffs in Request No. 44 ask Goodyear to produce all documents which relate to or discuss a lack of tack or loss of tack with respect to green tires or components thereof assembled or produced at the Goodyear plant from August 14, 1993 through August 14, 2002. Request No. 45 asks Goodyear to produce all documents pertaining to the use of vulcanization accelerators, anti-ozonants, protective waxes and other materials affecting the tackiness of rubber components used at the Goodyear plant in the same or "similar tires" from January 1, 1993 to January 1, 2003.

Goodyear initially objected to both Requests on grounds of overbreadth, undue burden, and relevance. With respect to No. 44, Goodyear stated that Plaintiffs have not alleged any defect in the subject tire relating to lack or loss of tack in the green tire at issue herein. With respect to No. 45, Goodyear also asserted a trade secret privilege to the extent Plaintiffs seek the formula or recipe for its compounds. In its supplemental responses Goodyear states there are no documents responsive to these Requests, with respect to the subject tire.

Again, neither party explains what "lack of tack or loss of tack with respect to green tires" means, or explains why vulcanization accelerators or anti-ozonants are or are not relevant to the claims and defenses. Plaintiffs do not explain why these documents are relevant to their claims. Moreover, there is no contention that the tackiness of green tires or rubber components caused the tread separation, but rather defects in terms of the "robustness" of the rubber or design of the tire without a nylon overlay.

The Court is therefore unable to make any determination with regard to relevance, nor to

determine whether a shorter period of time would be more appropriate.  Goodyear is not required to respond further to this Request.

RFP No. 46

Goodyear objected to this Request on grounds, *inter alia*, that it is repetitive with RFP No. 35.  The Court agrees; no further response to RFP No. 46 is necessary.

RFP No. 47

Plaintiffs ask Goodyear to produce copies of all docket submissions to the U.S. Department of Transportation or NHTSA referring to or discussing the issue of tread or belt separation.

Goodyear objected on grounds of overbreadth, undue burden, seeking irrelevant information and information regarding dissimilar tires.  It also referred to its supplemental response to RFP No. 35, in which it states there have been no written communications between Goodyear and NHTSA or any other governmental entity regarding tread/belt separations in Goodyear Radial ATR Pathfinder LT215/75R15 tires made to the same specification as the subject tire.

To the extent the DOT or NHTSA have documents, they are public records and are equally available to Plaintiffs as they are to Goodyear.  No further response is necessary.

RFP No. 48

Plaintiffs ask, with respect to any U.S. Department of Transportation or NHTSA investigation into the subject of tread or belt separation in Goodyear tires, to produce three categories of information:  (a) all related internal documents and business records; (b) all correspondence between Goodyear and the U.S. Department of Transportation or NHTSA; and (c) all statistical or engineering studies or analysis performed with respect to such investigation.

Goodyear initially objected on grounds of overbreadth, undue burden, seeking irrelevant

information and information on dissimilar tires, and asserted attorney-client privilege and work product protection.

The material identified in subsection (b) of the Request is repetitive.  Goodyear is directed to produce only any material in categories (a) and (c) above with respect to its own investigations into tread or belt separation in the subject tire or similar tires.  It need not produce materials or information submitted to DOT or NHTSA as that information is equally available to Plaintiffs as it is to Goodyear.  For any material as to which Goodyear asserts attorney/client privilege or work product protection, it must produce a <u>Vaughn</u> index.

### RFP Nos. 49 and 50

In Request No. 49, Plaintiffs seek all studies, published papers, management documents, or employee training information in Goodyear's possession relating to or discussing the risks or hazards of a vehicle's tire detreading.  In No. 50, they seek the same type of material relating to statistics on how often persons are injured in incidents when their vehicle tires detach partially or fully.

Goodyear objected on grounds of overbreadth, undue burden and relevance.  In addition, Goodyear stated that both Requests seek information that is a matter of public record and therefore equally accessible to Plaintiffs, and it asserted attorney/client privilege and work product protection.  With respect to RFP No. 50, Goodyear also objected on grounds of vagueness in the term "vehicle tires detach."   In its supplemental responses, Goodyear states that it has no such material with respect to the subject tire and tires made to the same specifications.

The Court sustains the objection.  Training materials have been dealt with in other discovery requests.  Much of the remaining information requested is, as Goodyear says, equally accessible to Plaintiffs as to Goodyear.  The Court also finds both Requests to be too vague to require further

response.

RFP No. 51

In this Request, Plaintiffs ask Goodyear to produce any statements made by Goodyear employees, "whether in public or internal," acknowledging that a vehicle occupant can be put at risk of injury if a vehicle's tire tread or belts detach, whether partially or fully, while in operation.

Goodyear objected on various grounds, including overbreadth, but then stated that Goodyear is not aware of any written statements made by Goodyear employees responsive to the Request, regarding the subject tire and tires made to the same specification.

The Request is, of course, so broad that compliance is impossible. It would even include non-official statements or conversations of a Goodyear tire store employee engaging in dinnertime conversation with a spouse. The overbreadth and scope is apparent. The court sustains the objection.

RFP No. 52

Plaintiffs ask Goodyear to produce the business documents which set out the responsibilities of Goodyear with regard to the design, manufacture, distribution, marketing and responsibility for product liability of the Goodyear light truck model tire.

Goodyear objected on numerous grounds, including overbreadth, vagueness and ambiguity, and the fact that the Request is unintelligible. In its supplemental response, Goodyear states that the subject tire was built to a proprietary specification created by Goodyear, and that the subject tires was manufactured at the Valencia, Venezuela plant. Goodyear further refers Plaintiffs to its supplemental answers to Interrogatory Nos. 7-8.

The Court agrees that the Request is vague and overly broad, even considering Plaintiffs'

explanation of what they intended to ask for in this Request, as given in the May 1 Letter and as set forth in their brief.  No further response is necessary.

RFP No. 53

This Request asks that Goodyear produce all industry standards, specifications or regulations, whether voluntary or mandatory, which were in effect and applicable to the manufacture of the subject tire and its component parts.

Goodyear initially objected on grounds of overbreadth and seeking information that is a matter of public record and equally accessible to Plaintiffs.  In its supplemental response, Goodyear  states that it is not aware of any mandatory "industry standards, specifications or regulations" as stated in the Request specifically applicable to the tire manufacturing process; but that the subject tire was designed to comply with FMVSS 119 as set forth in the C.F.R., and with guidelines issued by the Tire and Rim Association, guidelines which are available in the public domain.

The Court finds that this response is sufficient.

RFP No. 54

In this Request, Plaintiffs ask Goodyear to produce all written or electronic documentation sent to tire retailers, dealers and service shops relating to the Goodyear light truck tire including, but not limited to, how to inspect for separations, code for loss adjustment purposes, adjust for warranty claims, or respond to customer complaints.

Goodyear objects to the Request as overly broad, unduly burdensome, and seeking irrelevant information and information regarding dissimilar tires.  In its supplemental response, Goodyear refers Plaintiffs to its response to Interrogatory No. 13, in which it states that it is producing a Kelly-Springfield Adjustment Procedure Manual.

The Court has already ordered certain disclosures with respect to loss adjustment procedures and documentation; no further response is necessary with regard to loss adjustment, warranty claims or customer complaints.  However, Goodyear is directed to produce any documentation sent to tire retailer, dealer and service shops regarding how to inspect for tread or belt separations in the subject tires or similar tires.

RFP No. 55

This Request asks Goodyear to produce all photographs relevant in any way to this lawsuit, including photographs of the subject tire, tread in question, "companion tires in question," accident scene, witnesses or parties, and the Goodyear plant.

Goodyear objected on grounds of overbreadth, relevance, trade secret, attorney/client and work product protection, and on grounds the documents requested are not identified with reasonable specificity.  In its supplemental response, Goodyear states that is will produce photographs of the subject tire on a reciprocal basis with Plaintiffs.  Goodyear also states that it does not have any photographs of the accident scene, companion tires, subject vehicle ,witnesses or parties which were not previously produced.

This response is sufficient.

RFP No. 56

In this Request, Goodyear is asked to produce copies of all promotional materials from 1993-2003 for Goodyear light truck tires.

Goodyear objected on grounds of overbreadth and undue burden, and unreasonably long time frame.  In its supplemental response, Goodyear states that it did not advertise the Goodyear Radial ATR Pathfinder LT215/75R15 tires.

50

Goodyear is directed to produce any promotional materials for the subject tire or similar tires from the date of manufacture of the subject tire to the date of the accident at issue in this case, if any such material exists; if not, Goodyear shall so state.

RFP No. 57

In this Request, Plaintiffs ask Goodyear to produce "the data from any industry database to which Goodyear USA has access," including compilations related to tire tread and/or belt separation data for steel-belted radial tires manufactured or sold by Goodyear worldwide.

Goodyear initially objected on grounds of overbreadth, undue burden, relevance and vagueness, and asserted attorney/client, work product, and self-critical analysis privilege.   No supplemental response has been supplied to the Court.

The Court sustains the objection on grounds of overbreadth and vagueness.  No further response is necessary.

RFP No. 58

In this Request, Plaintiffs ask Goodyear to produce its management, engineering or marketing meeting minutes, memoranda, or other business records, referring to or discussing the issue of tread or belt separation in steel-belted radial passenger or light truck tires.

Goodyear objected on grounds of overbreadth, undue burden and relevance, and asserted attorney/client and work product protection.  In its supplemental response, Goodyear states "none" regarding the subject tire or tires made to the same specifications.

If none exist, clearly they cannot be produced.  Goodyear is directed to clarify its response by stating whether any such documents exist with respect to the subject tire and similar tires.  If so, they should be produced, along with any necessary Vaughn index.

RFP No. 59

In this Request, Plaintiffs ask Goodyear to produce all documents which reflect settlement agreements, understandings, or arrangements which Goodyear has made with anyone in connection with the incident which forms the basis of this lawsuit.

Goodyear objected on grounds of the joint defense privilege, attorney/client privilege and work product doctrine.  No supplemental response was supplied to the Court.

Settlements are not relevant to claims and defenses, and their production would only serve to chill parties' incentive to amicably resolve disputes.  The Court sustains Goodyear's objections.

RFP No. 60

In this Request, Plaintiffs ask Goodyear to produce a copy of any government standards or regulations, United States or foreign, which Goodyear believes were applicable to the design, manufacture, sale or performance of tires distributed or sold by Goodyear in 1993-2003.

Goodyear objected on grounds this Request is repetitive of RFP No. 53.

RFP No. 53 dealt with industry standards; this Request asks for government standards.  Such standards are matters of public record and are equally accessible to Plaintiffs.  Goodyear need not respond further to this Request.

RFP No. 61

Plaintiff asks Goodyear in this Request to produce documents which discuss in any manner, or reflect the sale of, the subject tire or the companion tires in question to any entity outside Goodyear USA.

Plaintiffs fail to demonstrate the relevancy of the Request to their claims or Goodyear's defenses.  The Court will not require production of these documents.

RFP No. 62

In this Request, Plaintiffs ask for all reports, photographs, computer analysis or simulations, or videotapes of any tests performed by or on behalf of Goodyear, on Goodyear light truck tires "or similar tires" to determine vehicle handling characteristics or stability when a tire fails because of tread/belt separation or blowout.

Goodyear objected on grounds the Request is overly broad, unduly burdensome, vague and ambiguous, and seeks irrelevant information and information regarding dissimilar tires. Goodyear also asserted attorney/client and self-critical analysis privileges and work product immunity. In its supplemental response, Goodyear states "none" with respect to the subject tire and tires made to the specification.

To the extent that documents do exist, Goodyear is directed to produce any such material relating to the subject tire and similar tires.

RFP No. 63

In this Request, Plaintiffs ask Goodyear to produce copies of all photographs, films, videos, diagrams, test reports and the underlying test data for any test relevant to the cause of action in question which may be conducted prior to the trial of this cause.

Goodyear objected on grounds of overbreadth, undue burden, relevance, attorney/client privilege and work product doctrine. Goodyear also stated that the materials are not identified with reasonable specificity.

The Court agrees that this Request is overly vague. The Court has already ordered discovery on a number of issues relating to testing; no further response to this Request is required. With regard to Plaintiffs' Request for material resulting from "any test . . . which may be conducted prior to the

trial of this cause," Goodyear is reminded of its duty to supplement responses to discovery requests.

RFP No. 64

In this Request, Plaintiffs ask Goodyear to produce all records showing what other tires were built with the same belt skim stock formulation as the subject tires.

Goodyear objected on grounds the Request is overly broad, unduly burdensome, seeks information regarding dissimilar tires, and seeks the trade secret formula or recipe for the compounds used in Goodyear tires.   In its supplemental response, Goodyear reiterates the statement made in the expert affidavit of James Stroble to the effect that the individual components of a steel-belted radial tire are designed to work in conjunction with the other components of that tire, and no one particular component, such as skim stock, defines a tire or its performance.

The Court, having defined the relevant group of tires, finds that this Request seeks information which is not relevant to the claims and defenses.  The objection is sustained.

RFP No. 65

In this Request, Plaintiffs ask Goodyear to produce all non-lawsuit complaints, incident reports or other notices made by any dealership, customer, consumer or governmental agency to Goodyear, alleging that a Goodyear light truck tire or belt separated or detached, partially or fully.

Goodyear objected on grounds of overbreadth, undue burden, and seeking information regarding dissimilar tires.  In its supplemental response, Goodyear refers Plaintiffs to its supplemental responses to RFP Nos. 7 and 35.  RFP No. 7 dealt with customer complaints, personal injury claims, and lawsuits; RFP No. 35 dealt with communications between Goodyear and any governmental entity, automobile manufacturer, or corporate entity.

This Request seeks relevant information; however, it is overly broad.  Goodyear is directed

to produce any complaints or incident reports made by any dealership, consumer or governmental agency to Goodyear, alleging tread or belt separation in the subject tire or similar tires, as defined in the Order on Scope of Discovery, for the period beginning from the date of manufacture of the subject tire to the date of the accident at issue in this case.  Goodyear need not duplicate any discovery made with respect to other discovery requests; however, in responding to this Request, it must cross-reference any such disclosures which are also responsive to this Request.

RFP No. 66

In this Request, Plaintiffs ask Goodyear to produce all documents and tangible things related to every consumer complaint Goodyear has received regarding Goodyear light truck tires.

Goodyear objected on various grounds, including overbreadth.  The Court finds this Request repetitive of other discovery requests, and it sustains the objection.

RFP No. 67

In this Request, Plaintiffs ask Goodyear to produce all documents and tangible things concerning every instance in which Goodyear has replaced at no cost, and/or has replaced at a reduced cost, Goodyear light truck tires for consumers.

Goodyear objected to this Request on grounds of overbreadth, undue burden, seeking irrelevant information and information regarding dissimilar tires, and it asserted attorney/client privilege and work product immunity.  In its supplemental response, Goodyear states that its Radial ATR Pathfinder tires were adjusted by Discount Tires, Goodyear's sole customer for such tires, and it refers Plaintiffs to its supplemental response to Request No. 11.

The Court finds that Goodyear's response to RFP Nos. 11 and 12, as ordered above, will satisfy this Request.  Nothing further is required.

<u>RFP No. 68</u>

In this Request, Plaintiffs ask Goodyear to produce all photographs, videotapes, diagrams and other material, or any other documentation in Goodyear's possession, regarding the accident which forms the basis for this lawsuit.

Goodyear objected on grounds the Request seeks information protected by attorney/client privilege and work product immunity. No supplemental response was supplied to the Court.

This Request is overly broad. It would encompass every letter or other communication between counsel and client, or among counsel, that was produced in this lawsuit. The Court will not order discovery on such a broad scale, nor will it require Goodyear to submit a <u>Vaughn</u> index for every piece of correspondence that has been created since this lawsuit was instituted. To the extent Goodyear has investigated the accident and the claims at issue herein, it is ordered to produce any photographs or other documentation of the investigation, including any summarizing report. If it asserts a privilege as to any such report or documentation, it must produce a <u>Vaughn</u> index.

## <u>Conclusion</u>

It is the Court's duty to oversee discovery to ensure that the objective of full disclosure is balanced against each party's right to be free of harassing and oppressive discovery requests, to the ultimate end that justice is served. However, "[i]t is not a 'court's function to drag a party kicking and screaming through discovery.'" <u>FDIC v. Butcher</u>, 116 F.R.D. 196, 203 (E.D. Tenn. 1986).

Many of Plaintiffs discovery requests, as discussed above, are overly broad and burdensome, to the point of harassment. Defendant, for its part, tends to resist even simple and obviously discoverable requests such as providing the identity of the persons responding to the requests. Because a large part of the discovery controversy in this case has, until now, centered on the

definition of the group of relevant tires, and because the Court has defined that group for purposes of this litigation, the parties should now be better able to resolve their discovery differences without asking the Court to act as arbiter of every interrogatory and request for production.

While it is apparent that counsel did make some attempt to communicate and compromise with respect to their discovery disputes, it is also apparent that something is fundamentally amiss when the Court is called upon to make 107 separate rulings, in this one motion alone, when there are still several discovery motions pending in this case.

The Court expects the parties to make more vigorous efforts to cooperate with each other in the discovery process in this case.  Counsel are referred to the Creed of Professionalism of the State Bar of New Mexico, particularly Part C of the Lawyer's section.

## **<u>Order</u>**

IT IS THEREFORE ORDERED that Plaintiffs-Intervenors' Motion to Compel Defendant Goodyear to Fully Respond to Discovery [Doc. 99] is granted in part and denied in part, as detailed above. For each discovery request discussed in this Order, Goodyear shall either produce the material as directed or else state, under oath, that no material responsive to the request exists.  All discovery ordered herein shall be served within ten days of the date of this Order.

*Lorenzo F. Garcia*
_____
Lorenzo F. Garcia
Chief United States Magistrate Judge
